ORVIS S. NICHOLS *vs.* M. A. BINGHAM.

January Term, 1898.

Present:  ROWELL, MUNSON, START and THOMPSON, JJ.

*V. S. 2108 Construed—Court of Insolvency—Sale of Perishable Property—
Title in Dispute—Chattel Mortgage—Oath Must Verify the Actual
Transaction.*

V. S. 2108, providing for a sale, under order of the court of insolvency,
of property of a perishable nature coming to the possession of the
assignee, and the holding of the proceeds in place thereof, when the title
is in dispute, applies to property covered by a mortgage, the validity of
which is challenged by the assignee.

Such a sale passes the title free and clear of the mortgage lien, and the
mortgagee is remitted to his remedy against the fund in the court of
insolvency, and cannot maintain trover for the goods.

A chattel mortgage is invalid as against creditors if it·is made on its
face to secure a note from the mortgagor to the mortgagee larger than
the actual debt between them, while its real purpose is to secure the true
debt and future advancements and a liability as endorser; for the oath
must verify the actual transaction.

*Enright and Fitch* v. *Amsden*, 70 Vt. 183, distinguished.

TROVER for store furniture, fixtures and a stock of goods.
Plea, general issue with notice. Trial by jury at the
September Term, 1897, Chittenden County, *Taft*, J., presid-
ing. Verdict ordered and judgment thereon rendered for the
defendant. The plaintiff excepted.

*V. A. Bullard* and *W. L. Burnap* for the plaintiff.

*M. A. Bingham, J. W. Russell* and *Seneca Hazelton* for the
defendant.

ROWELL, J. The plaintiff holds .two mortgages against
Bliss, the insolvent debtor; one dated Oct. 1, 1894, on the
goods and fixtures then in the debtor's store, and on all
other goods that he thereafter bought to replenish his stock,
conditioned for the payment of a thousand-dollar note at
one day's date; and the other dated June 1, 1896, on only
the goods and fixtures then in the store, conditioned for the
payment of a five-thousand dollar note at one day's date.

On Nov. 3, 1896, the debtor was adjudged an insolvent on
his own petition, and on the same day the defendant was
appointed assignee of his estate, which was then assigned to
him by the judge of the court of insolvency according to the
statute in such case made and provided; and thereupon the
defendant as such assignee took possession of all and singu-
lar the goods and fixtures then in the debtor's store. After-
wards, and before the 10th of said November, the plaintiff
demanded said goods and fixtures of the defendant, who
refused to give them up, but on the contrary, on said last-
mentioned day, applied to the court of insolvency under V.
S. 2108, representing that the plaintiff claimed to have a
prior lien on all of said property by virtue of certain chattel
mortgages executed to him by the insolvent debtor, and a

right to the possession thereof by virtue of the same; and alleging that the defendant denied and disputed the right claimed by the plaintiff; that the property was of a perishable nature and likely to deteriorate in value; and praying for an order of sale, which was made on the 16th of said November, on notice to the plaintiff, who appeared and objected thereto, and the defendant was ordered to hold the funds received in place of the property disposed of, as provided in said section. The property was sold pursuant to the order, but after this suit was commenced, which was on the 24th of said November, whereby the plaintiff seeks to recover in trover for the property covered by his mortgages.

The defendant claims that the action cannot be maintained, for that the proceedings in the court of insolvency draw the matter into that court, and that the plaintiff must seek his remedy there, and cannot have it elsewhere.

The statute made it the duty of the debtor to schedule the property in question, and to state the liens existing thereon; and the assignment conveyed to the assignee the equity of redemption therein. The section of the statute under which the order of sale was made provides that when it appears to the judge that the title to any portion of an estate that has come to the possession of an assignee is in dispute, and that the property is of a perishable nature and likely to deteriorate in value, he may, on the petition of the assignee, and after such notice to the claimant as he deems reasonable, order it sold under the direction of the assignee, who shall hold the funds received in place of the property disposed of; and that the proceeds of the sales shall be considered the value of the property in any suit or controversy between the parties; but that the provision shall not prevent the recovery of the property from the possession of the assignee by an action of replevin commenced before the judge orders the sale.

If this section applies to mortgages, it must be conceded that it gave the judge discretionary power to make the

order of sale in question, for all the other jurisdictional facts existed to bring the case within it; and when we consider its language and purpose, there can be little doubt that it does apply to mortgages. Its language is, "when the title to any portion of an estate," etc. This is certainly broad enough to include property that is mortgaged. Its purpose is to provide a way for saving property in dispute that has come to the possession of the assignee and that would perish or lessen in value while the title is being litigated. It is like the statute for selling on the writ, property attached thereon that is liable to perish or waste or to be greatly reduced in value by keeping. This purpose is as applicable to mortgaged property of a perishable nature that is in dispute as to any other property of that nature, and the same necessity for saving it exists. We hold, therefore, that the section applies to mortgages.

Judge Lowell said in *Foster* v. *Ames*, 2 B. R. at p. 465, that he always doubted whether section twenty-five of the Bankruptcy Act of 1867 was intended to apply to mortgages; that its language seemed better adapted to persons claiming by title paramount. That section is much like the one under consideration, but differs in not making it necessary to an order of sale both that the property should be perishable and the title in dispute; either was sufficient; whereas under our statute, both are necessary. But he did not decide the question, as he found warrant under another section for ordering a sale. Had he not found such warrant elsewhere, and had the property been perishable, which it was not, he might have found the warrant in the twenty-fifth section.

The order in question, then, being authorized, the sale under it was effective to pass title to the purchaser free and clear of the mortgage liens. The statute does not declare this to be so, but that is the construction we put upon it; for it cannot be supposed that the intention was that the purchaser should take subject to the mortgages, thus apply-

ing the doctrine of *caveat emptor*, when the statute provides that the proceeds of the sale shall be considered the value of the property.

The property, therefore, has been lawfully converted into money, the mortgage liens thereon are gone, and the money is in the court of insolvency, and subject to its control, and the question is, whether the plaintiff is remitted to that fund for his remedy. We think he is. He certainly could not now proceed against the purchaser to foreclose his mortgages. Can he proceed against the assignee any better? for this suit, in effect, is to foreclose. According to the analogies of the law, he should now pursue the fund, and the statute provides him ample remedy for pursuing it, for section 2143 provides for application to the court of insolvency for the appointment of commissioners to hear and determine the matter in dispute and report to the court their finding in the case; and either party can appeal from their decision to the county court, where a trial by jury can be had. *Sowles* v. *Bailey*, 69 Vt. 515.

It is true that the language of section 2108 affords some ground for saying that its only purpose is to provide a way for saving the property pending litigation, without intending to control as to the forum; but the word "suit" is a generic term of broad signification, and applies to any proceeding in a court of justice by which a person pursues the remedy that the law affords him. The modes of trial may be various; but if the right is litigated between parties in a court of law, the proceeding by which the decision of the court is sought is a suit. *Upshur County* v. *Rich*, 135 U. S. at p. 474. In *Calderwood* v. *The Estate of Calderwood*, 38 Vt. 171, the words, "suit or proceeding," in the enacting clause of the statute removing disqualification of witnesses by reason of interest, and the word "action" in the proviso, and the word "suit" in a subsequent act providing that the former should not affect suits pending at such a time, were held to mean the same thing; and proceedings before com-

missioners on the estate of a deceased person, on a claim presented for allowance against the estate, were held to be a suit pending, and therefore within the subsequent act. So the words, "suit or controversy," in section 2108, may well be regarded as synonymous; and they are fully satisfied if held to relate only to suits under the Insolvency Act, for a proceeding under section 2143 is as much a suit as a proceeding before commissioners on the estate of a deceased person, and it is within the general definition of the word as well.

On the final determination of such a suit, if favorable to the plaintiff, he would be entitled to have the fund applied to the extent of his right therein, towards the payment of his debts; and if he had a right to prove the residue, if any, he could apply to the court of insolvency under section 2074 for leave to do so.

This view does not conflict with *Eyster* v. *Gaff*, 91 U. S. 521, and is favored by *Lindemann* v. *Ingham*, 36 Ohio St. 1, and *Buschman* v. *Hanna*, (Md.) 18 Atl. Rep. 962. In *Eyster* v. *Gaff*, the only holding was that the Bankruptcy Act did not, of its own force, on the adjudication of bankruptcy, nullify a proceeding in a territorial court to foreclose a mortgage against the bankrupt.

The mortgage of June 1, 1896, is not valid against creditors, and consequently not against the assignee, who stands in the place of creditors. Its purpose was to secure the plaintiff for $700 then recently advanced to the debtor, and perhaps to further secure him for the thousand-dollar note secured by the first mortgage, and for future advances, and for past and future indorsement. To accomplish this, the plaintiff took the five-thousand-dollar note specified in the condition of the second mortgage, and the oath thereto appended is, that the mortgage was given to secure that debt, and for no other purpose, and that the same was a just debt, honestly due and owing from the mortgagor to the mortgagee, which was not true. The plaintiff was not

at the time under much if any liability for the debtor as indorser, nor did he afterwards incur such liability to much if any extent, nor advance but little if anything; and on Sept. 28, 1896, on complaint of a creditor, he indorsed the note down to $700, his real claim thereon.

The oath must conform to the purpose of the mortgage, and verify the truth, justice and validity of the debt or other liability sought to be secured thereby; but this oath cannot be said to do that, for the true character of the note is not disclosed by the mortgage, and therefore the oath as drawn did not and could not verify it as required. *Tarbell* v. *Jones*, 56 Vt. at p. 317; *Sherman* v. *Estey Organ Co.*, 69 Vt. at p. 358; *Boice* v. *Conover*, (N. J. Eq.) 35 Atl. Rep. 402.

This is not like *Gilbert* v. *Vail*, 60 Vt. 261, and *Enright and Fitch* v. *Amsden*, 70 Vt. 183, for there the mortgages disclosed the true character of the liabilities, and the oaths were conformable thereto.

*Judgment affirmed.*