CASE 16—ACTION TO RECOVER MONEY PAID ON A FORGED NOTE—
JUNE 4.

# First National Bank of Paducah
# v. Wisdom's Executors.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS—AFFIRMED.

PLEADING—INCONSISTENT DEFENSES—BILLS AND NOTES—PROOF OF OTHER FORGERIES TO ESTABLISH FORGERY OF NOTE SUED ON—BANK PASS BOOK AND CHECK BOOK AS EVIDENCE—PHOTOGRAPH OF SIGNATURE AS EVIDENCE—CONSIDERATION FOR NOTE.

Held:   1. In an action on a promissory note, the pleas of *non est factum* and want of consideration are not inconsistent, and may be joined.

2. Under a plea of *non est factum* to an action by a bank on a promissory note which was placed in the bank by its president, who soon thereafter absconded, being a confessed forger and defaulter, it was admissible for defendants, the executors of the person whose name was signed to the note, to prove

that the president, after the note sued on was discounted, had in his possession other notes purporting to have been signed by testator, and which were manifestly forgeries, as the transactions were logically connected, and when considered together authorize the conclusion that all the notes were prepared by the president to conceal his delinquency, with the intention to use them as it became necessary; and, besides, the fact that he forged testator's name to the other notes would be admissible, at least, to show his capacity to imitate the signature.

3. As the fact that the president was a defaulter for a large amount tends to show the motive for him to forge the notes sued on, plaintiff bank's admission of that fact in a petition filed by it on his bond was admissible in evidence for defendants.

4. The pass book of the testator was admissible to show that in his account with the bank he was not credited with the amount of the note sued on, which was $5,000; it being unusual for business men not to use a check in a transaction involving so large an amount.

5. The check book of testator was, perhaps, competent to show his business methods; but, if not, the fact that it contained no entry of the amount of the note sued on did not render its admission prejudicial, as the other evidence showed that such an entry was not to be expected on that book.

6. The signature in contest and certain genuine signatures of W. having been enlarged and reproduced by photography, the photographs were admissible in evidence, after proof by the photographers of their accuracy.

7. The court properly instructed the jury that, though the testator signed and delivered the note to the bank, yet if he did not receive from it, by himself or order, or for his use, the proceeds of the note, they should find for defendants, as plaintiff, having pleaded a particular consideration for the note, was bound to prove that consideration.

J. W. BLOOMFIELD AND QUIGLEY & QUIGLEY, ATTORNEYS FOR APPELLANT.

This action was brought by the executors of B. H. Wisdom, deceased, to recover of appellant bank $3,140 paid by them on a note for $5,000, dated August 22, 1896, and due on demand against their testate, B. H. Wisdom, deceased, who died April 16, 1897.

Since making this payment, the appellees have learned that said note is a forgery, is not the act and deed of said decedent, and is and was without consideration, which facts the appellees set up in their petition.

First National Bank of Paducah v. Wisdom's Executors.

The appellant denies the allegations of the petition, and by amended answer and counterclaim seek to recover of appellees the balance due on said note, which it alleges was executed by the decedent, B. H. Wisdom, with his own hand.

On the trial, the jury returned a verdict for the plaintiffs and from this verdict and judgment the defendant appeals.

The errors assigned by the bank for a reversal are:

1. The admission of incompetent evidence.
2. Error in instructions to the jury.
3. That the verdict is flagrantly against the evidence.

The evidence shows that the note was executed on August 22, 1896, which was Saturday, and on Monday, the 24th, it was discounted in the bank and duly entered on the books of the bank.

The books show that it was entered upon the discount book in the handwriting of M. G. Cope, and on the ledger in the handwriting of J. W. McKnight, bookkeeper.

That the decedent was in the habit of going into the bank daily and kept his box there, containing his papers, also a table at which he wrote, and was an intimate friend of M. G. Cope; that on the day this note was discounted in the bank, $5,000 of currency or of cash items in the drawer of the bank was taken out of the bank. Who got it, the officers of the bank, with the exception of M. G. Cope, have no knowledge. He stated, however, to the executors (appellees) so they testify, that he paid B. H. Wisdom the $5,000 in currency over the bank counter on the 24th day of August, 1896.

To establish the plea of *non est factum*, the appellees mainly rely upon the forgeries committed by M. G. Cope in November and December, 1896, some three or four months after the execution of the note and a few weeks after the death of Wisdom, he having died October 28, 1896.

On the trial the court admitted the testimony of Parker, Eastwood, Hughes, Flournoy, Rudy, Hayes and Chowning, who testified that they had never seen B. H. Wisdom write and were in no way acquainted with his handwriting, to go to the jury on the genuineness of the signature to the note from comparison only; also admitted Wisdom's bank check book and check stub book; also testimony as to M. G. Cope having committed forgeries subsequent to the note in controversy. Cope was not a party to the suit, not a witness in the case and no pleading as to any forgery by Cope.

The court especially erred in giving instruction No. 2 to the jury: "That, although the jury believe from all the evidence in the case that Wisdom did sign and deliver said note to the

First National Bank of Paducah v. Wisdom's Executors.

bank, yet if he did not receive from the bank by himself or order or for his use the proceeds of the note, the law in such case was for the executors and the jury should so find." There were also other errors in the evidence, and instructions which the court will see in the bill of exceptions and on which we rely for a reversal.

### AUTHORITIES CITED.

Hawkins v. Grimes, 13 B. Mon., 263; F,ee, &c., v. Taylor, 85 Ky., 261; Lawhorn v. Carter, 11 Bush, 7-8-9; Greenleaf on Evidence, vol. 1, sec. 51, 52; Underhill on Evidence, sec. 140, 141, sec. 8, p. 17; Ky. Stats, sec. 1131.

HENRY BURNETT, ATTORNEY FOR APPELLEES.

### SYNOPSIS AND AUTHORITIES.

1. Where the holder of a note, to which a plea of *non est factum* has been interposed, unnecessarily alleges a specific consideration for the note, he must prove the consideration, if denied. L. & N. v. Literary Society, 91 Ky., 395, 400, 401.

2. Objection to a plea of *non est factum*, accompanied by a plea of no consideration, will be sustained, upon a motion to require the pleader to elect which plea he proposes to rely upon. If no objection is interposed, it will amount to a waiver.

Kendall's Exec. v. Collier, 97 Ky., 450; Andrews v. Hayden's Adm'r., 88 Ky., 458; Brann v. Brann, 19 Ky. Law Rep., 1814.

3. Witnesses, who, by their calling and experience, are expert judges of handwriting, may compare a disputed signature of a party with admitted signatures of such party, and form and express their opinions from such comparison to the jury. They may also give to the jury the reasons for their opinion.

This rule is, by the Act. of May 17, 1886, Kentucky Legislature, an amendment of the old rule, that a witness who is introduced to prove the handwriting of a person must have personal knowledge of it either by having seen him write, or by having seen writing admitted by him to be his, or, with his knowledge, acted upon as his, or so adopted into the ordinary business of life as to create a reasonable presumption of its genuineness.

Sec. 604, Civil Code; Andrews v. Hayden's Adm'r., 88 Ky., 459; Kendall's Executor v. Collier, 97 Ky., 450; Keith v. Lothrop, 10 Cush., 457.

Photographs of a disputed signature and of admitted signatures may be used as a basis of comparison of handwriting.

Jones on Evidence, vol. 2, sec. 597; Luco v. U. S., 23 How., 541; Marcy v. Barnes, 16 Gray, 161 (Mass.); Eborn v. Zempleman, 47 Tex., 543; (26 Am. Rep., 315); U. S. v. Ortiz, 176 U. S., 430.

First National Bank of Paducah v. Wisdom's Executors.

Opinion of the court by JUDGE HOBSON—Affirming.

B. H. Wisdom died on October 28, 1896, and appellees qualified as his executors. He left a large estate. In November, 1896, the appellant, the First National Bank of Paducah, presented to the executors a note dated August 22, 1896, due on demand, for $5,000, and purporting to be executed to it by the testator. Appellee, on February 9, 1897, paid appellant on the note $3,140; but after this refused to pay the balance, and instituted this action to recover of appellant the amount they had paid, alleging that the note was a forgery, and without consideration. The bank, by its answer, denied that the note was a forgery, and alleged that it was executed to it by the testator, who signed it with his own hand, and delivered it to the bank for the sum of $5,000 loaned at the time to him by it. A reply was filed denying these allegations, and on trial before a jury a verdict was returned in favor of the executors for the amount they had paid. Judgment was entered upon this verdict, and the bank appeals.

It is insisted for appellant that the court erred in allowing the executors to plead *non est factum* and want of consideration, on the ground that the two pleas can not be joined. In Smith v. Doherty 109 Ky., 616 (22 R., 1238), (60 S. W., 380), this court held that the two pleas are not inconsistent, and they may both be made in the same pleading. The weight of authority and the reason of the rule sustain this conclusion, especially in the case of a personal representative who has no knowledge of the facts.

At the date of the note M. G. Cope was president of the bank; T. A. Baker was cashier. Baker knew nothing of the execution of the note. The teller knew nothing about it. The only officer of the bank who professed to

know anything about it was Cope, the president. The note was entered in his handwriting on the discount book of the bank, and he stated to the executors, when demand was made of the payment of the note, that the bank paid Wisdom $5,000 in currency, which it loaned him on the note on August 24th. The date of the note, August 22d, was Saturday, and the entry on the discount book was in Cope's handwriting on Monday, the 24th. It appears from an examination of the bank books by experts, who compared the deposits and checks paid on the 24th, that $5,000 in money was not paid to any one on that day; but it also appeared that what is called a "cash item" for this amount was taken out on that day,—that is to say, the money had previously been withdrawn, and a cash ticket or paper of some description had been carried in place of it. At the time of the transaction Wisdom had something over $3,000 on deposit with the bank, and more than twice as much on deposit with another bank in New York. Shortly before the suit was filed, and after the $3,140 had been paid, Cope, the president of the bank, absconded from Paducah, a confessed forger and defaulter. The signature to the note in contest was proved by a number of witnesses not to be the signature of the testator. There were as many or more witnesses, however, with equal opportunities for judging, who testified that they thought it was his signature. The note was never presented to the testator, although he was daily about the bank until shortly before his death. The $5,000 was not credited to him on his account with the bank, and there was no showing that he had used it in any way. On the contrary, the jury were warranted in concluding, from the proof as to the careful business habits of the testator, that he had not received in person this money.

For some time before the date of the note Cope's habits had been bad. He had been speculating in cotton, and, perhaps, in corn, and had sustained heavy losses. There was some proof tending to show that the testator, who was an intimate friend of Cope's, had been concerned with him at one time in some of these speculations, although the date and extent to which he was interested are very uncertain. The original note, and a number of other signatures of the testator, admitted to be genuine, which were used on the trial, have been filed with the transcript, and from an examination of the signature, and all the evidence, we reach the conclusion that the verdict of the jury should not be disturbed on the facts, if the case was properly submitted to them.

It is earnestly insisted for appellant that there were grave errors in the admission of evidence on behalf of appellees. The court permitted T. E. Boswell to testify, in effect, as follows: "In the latter part of August, before Mr. Wisdom's death, while Cope was president of the First National Bank, he stated he had a note for $10,000.00 signed by Mr. Wisdom. I did not see the note. I did not see the figures, nor the signature, but he showed me a paper, and said it was a note amounting to ten thousand dollars of Mr. Wisdom. He stated to me that he had a note of Mr. Wisdom for ten thousand dollars. R. F. Allen and myself were on a note we had given for $5,000.00, and we wanted him to fix it up, and he had a note in his pocket, and he said he thought in a few weeks he could fix it up; that he had Mr. Wisdom's note for ten thousand dollars." On cross-examination, the witness stated: "He said he was going to buy some corn, and Wisdom was going into the deal with him. This occurred on the street, as he was coming from home.

He afterwards told me he did not get the money on the note, and they did not go into the deal." R. M. Chowning testified as follows: "I am cashier of the First National Bank of Fulton. I visited Mr. Cope about September 19, 1896, and remained all night at his house. [He asked me when the bank examiner, Mr. Escott, would probably be around again, to which I replied that I did not know, but that he would perhaps be here before very long. He said he was all right in the bank; that he only had a demand note for $2,500.00 in the cash drawer, which he could arrange very easily if necessary;] whereupon he drew from his pocket a note for $5,000.00, payable twelve months after date, to the order of M. G. Cope, and signed by B. H. Wisdom. [Said he told the old gentleman that he was in hard luck, and might need it, and Mr. Wisdom gave him that note.] The body of the note was the handwriting of Mr. Cope. I think it was dated, but do not remember the date." The court excluded the words inclosed in brackets, but admitted the remainder. The court also permitted the petition in the case of appellant against the Fidelity & Deposit Company of Maryland, the surety of Cope in his official bond, to be read in evidence, which contained allegations to the effect that M. G. Cope, while president of the bank, embezzled $13,000 of the money of the bank in November, 1896; that on the 28th day of November, 1896, he fraudulently took from the bank $6,000; that, in order to conceal the embezzlement, he placed in the bank a forged note, purporting to be signed by R. A. Hays and W. J. Slayden for $6,000; that on or about the 12th of November, 1896, he embezzled the further sum of $7,000, and placed in the bank two other forged notes, for $3,500 each, one purporting to be signed by G. R. Allen, and the other by S. G. Griffith."

It is said that the statements of appellant's petition in its action against the Fidelity & Deposit Company were competent as admissions of the party in interest.     This is true if it was an admission of a relevant fact.     But admissions of irrelevant facts, though made by a party himself, are no more competent than other proof of such facts.

It remains, therefore, to inquire whether the facts shown by the above evidence were relevant, and, as all the evidence seems governed by the same principles, it will be discussed together.     The general rule is that, where the question is whether a certain person forged a particular instrument, proof is inadmissible that on another occasion he forged another paper, wholly disconnected with the one in controversy.     Dodge v. Haskell, 69 Me., 429; Dow v. Spenny, 29 Mo., 387; Viney v. Barss, 1 Esp., 293; Balcetti v. Serani, Peake, 192.     The reason given in one case was that the plaintiff would not be prepared to show the genuineness of other writings, and in subsequent cases that such proof introduced a foreign and irrelevant matter, destroying the unity of the issue.     On the other hand, where there is a connection between the transactions, they may be given in evidence.     Thus in Knight v. Heath, 23 N. H., 410, the genuineness of a marriage certificate was in contest, and it was held competent to prove that a certificate purporting to be signed by a justice of the peace to the same effect, and written on the same piece of paper, was a forgery.     The court said: "Where the object is to show the fraudulent character of a transaction or instrument, it is always competent to offer evidence of other transactions connected in point of time or other circumstances which may throw light upon the principal case, even though that connection is more

remote than that between the two writings upon this paper. Thus, on a question respecting the fraudulent character of a deed obtained by an administrator from one of the heirs, evidence of fraud in relation to the property of another heir of the same estate was admitted. Lovell v. Briggs, 2 N. H., 218. So, to prove fraud in a conveyance, evidence that the debtor, about the same time, made other conveyances indicating fraudulent collusion, is admissible. Whittier v. Varney, 10 N. H., 291; Benham v. Cary, 11 Wend., 83; Blake v. White, 13 N. H., 267; Howe v. Reed, 12 Me., 515; Aldrich v. Warren, 4 Shep., 565; Hawes v. Dingley, 5 Shep., 341; Foster v. Hall, 12 Pick., 89. So, where there were circumstances creating suspicion that a note had been fraudulently altered, the alteration of other notes, drawn and indorsed by the same parties, to take up one for which the note in question had been given, was held admissible, as going to strengthen the suspicion. Rankin v. Blackwell, 2 Johns. Cas., 198; Snell v. Moses, 1 Johns., 99." In Blalock v. Randall, 76 Ill., 224, the defendant had had the plaintiff arrested on a charge of forgery, and after his discharge he sued for damages. The defendant pleaded reasonable grounds to believe the plaintiff guilty of the offense. It was shown that the plaintiff had obtained from the defendant his signature to a note. The defendant testified that at the time the signature was obtained plaintiff pretended he was appointing him as agent for him in certain territory for the sale of a patent right; that he had signed his name four times to papers which plaintiff said were required for constituting the agency; that nothing was said about a note; that he did not know any of the papers was a note, but supposed them to be the agency papers, as plaintiff said they were. The plaintiff, however, testified that the

defendant signed the note knowingly, and it was intended as a note. They were the only witnesses to the transaction. The defendant then offered to prove by several witnesses that about the same time, and in the same neighborhood, they had the same kind of transactions with the plaintiff, which resulted in pretended notes on them being obtained in the same manner. There was testimony that the defendant had certain blanks in his possession which were used in all his transactions in the same way. The trial court excluded the evidence, but on appeal it was held that the evidence should have been admitted. The court said: "We think this excluded testimony should have been admitted. This evidence of the fraudulent obtention by plaintiff from other persons of notes by means of the same device, in the same neighborhood, near the same time, and while engaged in the same employment, would appear to be admissible to characterize the employment of the plaintiff, and would illustrate the manner in which the alleged fraud upon the defendant might have been accomplished,—the feasibility of it,—and would tend to corroborate the testimony of the defendant." In Tyler v. Todd, 36 Conn., 218, proof of the forgery of other notes was admitted. The court held it proper, and said: "Questions of this character, involving, as they do, a great variety of transactions, with the accompanying circumstances, often require the testimony to take a wide range." An isolated fact, standing alone, may be irrelevant or of no value, but, when supported by other circumstances, it may serve to make out a chain of circumstantial evidence which is well-nigh conclusive. Forgery is, of necessity, a matter of secrecy, and it is often only by the collection of a number of circumstances

that the fraud can be exposed. In Steph. Ev., art. 7, it is said: "When there is a question whether any act was done by any person, the following facts are deemed to be relevant: That is to say, any fact which supplies a motive for such an act, or which constitutes preparation for it; any subsequent conduct of such person, apparently influenced by the doing of the act; and any act done in consequence of it by, or by the authority of, that person." This rule has often been followed by this court. Holt v. Crume, 16 Ky., 499; Gregory v. Ford, 44 Ky., 471; Marshall v. Marshall, 51 Ky., 460. In Shannon v. Kinney, 8 Ky., 3, (10 Am. Dec., 705) the court said: "There is no question that in strict propriety the parties should confine their evidence to the matters in issue, and that proof wholly foreign to such matters is inadmissible; but, to sustain an objection to evidence merely on the ground that it is irrelevant, it ought to appear to be so beyond all doubt, for it is a settled rule, in all cases where the competency of evidence is doubtful, to admit it to go to the jury, leaving them to determine as to the weight to which it shall be entitled."

Under these principles, how stands the case before us? Neither the note exhibited by Cope to Boswell, nor that exhibited to Chowning, appears since to have been heard of, and it may be fairly assumed from the circumstances that both were forgeries. While the evidence is not definite, we think it may also be fairly concluded from the proof that Cope was a defaulter to the bank before the discount of the note in contest on August 24th; that he concealed his delinquency at first by cash items, then by this paper; that later he prepared the notes shown to Boswell and Chowning for the same purpose, and still later, as it became necessary, the notes of Hays and

Slayden and of Allen and Griffith. In other words, he was a defaulter to the bank, and, as necessity arose, resorted to one expedient or another, from time to time, to cover his sins. The notes were not, therefore, distinct transactions, but were logically connected. A transaction may not be confined to what is done on one day or at one place. Immediateness is tested, not by closeness of time, but by logical relation. The fact that Cope was a defaulter for a large amount is competent as showing the motive for him to forge the note in contest. The fact that he forged Wisdom's name to other notes would show, at least, his capacity to imitate the signature. The note in contest was put into the bank by Cope. He stated that he then paid Wisdom the money on it. He alone, of all of the officials of the bank, had anything to do with this note and the books of the bank showed that the money was not paid out of the bank on that day. We have, then, this note traced to Cope. If Wisdom did not sign the note, Cope certainly did. Where a writing claimed to be forged is traced to a third person, it has been held competent to prove that this person had the capacity to imitate the signature of the supposed obligor, and that about the same time he had forged his name to other similar papers. Rowt v. Kile, Gilmer, 202. This is undoubtedly so where the other instruments were executed in the same general transaction, in the same employment, and for the same purpose with the one in contest. We conclude, therefore, that there was no error in the admission of the evidence referred to.

It is also insisted for appellant that the court erred in allowing Wisdom's pass book and check book to be shown to the jury, on the idea that books are never competent to prove a negative. The pass book was kept by ap-

pellant, and was competent to show that Wisdom was not credited with the $5,000 in his account with the bank. It is so unusual for business men to draw out of a bank $5,000 in money, and carry it off in their pockets, instead of doing the business by check, that the fact was competent to go before the jury for whatever it was worth. The other book was admittedly in Wisdom's handwriting; it threw some light on his methods of doing business, and was, perhaps, competent for this purpose; but, in any view of the case, appellant was not prejudiced by the introduction of this evidence, for the proof introduced on the trial showed beyond doubt that the money in contest could not be expected to be found on this book, and therefore the fact that there was no such entry on it could not have prejudiced appellant.

Appellees had the signature in contest and two other signatures of the testator, one at the foot of a check, and one on the back of a note, both clearly genuine, enlarged and reproduced by photography. These photographs were exhibited to the jury after proof by the photographers of their accuracy. Appellant complains of the admissions of the photographs. But they were only a more enduring form of exhibiting the signatures to the jury as under a magnifying glass. Such evidence has often been held competent. Luco v. U. S., 23 How., 541, (16 L. Ed., 545); Marcy v. Barnes, 16 Gray, 161 (77 Am. Dec., 405); Eborn v. Zimpleman, 47 Tex., 503 (26 Am., Rep., 315); U. S. v. Ortiz, 176 U. S., 430 (20 Sup. Ct., 466, 44 L. Ed., 529).

The court instructed the jury that they should find for the bank if the testator signed and delivered to it the note. He also instructed them that, although the testator signed and delivered the note to the bank, yet if he did not re-

ceive from it, by himself or order, or for his use, the proceeds of the note, they should find against appellant. Complaint is made of the latter instruction; but appellant had pleaded a particular consideration for the note, and the court properly limited the instruction to the issue as formed by the pleadings. On the whole record, we see no error prejudicial to the substantial rights of the appellant, and the judgment complained of is therefore affirmed.

---

CASE 17—MOTION FOR JUDGMENT ON A BOND—June 4.