D. H. FRALEY ET AL. v. G. W. FRALEY ET AL.

(Filed 21 April, 1909.)

1. Deeds and Conveyances—Fraud—Undue Influence—Mental Capacity—Preponderance of Evidence.

Mental incapacity of a grantor, and fraud and undue influence on the part of the grantee in procuring his deed, is only necessary to be shown by the greater weight of the evidence, and a charge of the judge imposing a greater burden is erroneous. (*Harding v. Long*, 103 N. C., 1; *Chaffin v. Manufacturing Co.*, 135 N. C., 95, cited and approved, and the terms, "to the satisfaction of the jury by the greater weight of the evidence," reconciled and explained by HOKE, J.)

2. Deeds and Conveyances—Evidence—Fraud—Transactions With Deceased—Independent Facts—Res Gestæ.

In an action to set aside a deed, made by a deceased grantor, for fraud and undue influence, admittedly executed by him, evidence is admissible which tends to show, as an adequate consideration for the deed, that prior to its execution, and with a view thereto, the grantor had three persons to pass upon the value of the land granted, with the benefits conferred by the grantees, who decided that one was a fair equivalent for the other, and immediately thereafter told the grantor, who afterwards executed the deed for the consideration indicated. This evidence is not a conclusive or a controlling fact in the inquiry, but relevant as an independent fact in the *res gestæ*, and not excluded by the statute as a transaction or communication with the deceased. (The meaning of the term "*Res gestæ*" discussed by HOKE, J.)

ACTION tried before *Long, J.,* and a jury, at November Term, 1908, of ROWAN.

The action was instituted to set aside a deed made by Jacob Fraley, now deceased, to Jane E. Stokes, daughter of said Jacob, and one of the defendants, and G. W. Fraley, his son, another

one of defendants, on the ground of mental incapacity and of fraud and undue influence. Issues were submitted:

1. As to the mental capacity of Jacob Fraley.

2. As to fraud and undue influence.

It was shown that, in March, 1900, Jacob Fraley died, leaving surviving a number of children and grandchildren, his descendants and heirs at law, who were parties plaintiff or defendant in the action; that about sixteen months before his death Jacob Fraley's home having burned, he went to live with Jane Stokes, his daughter, and G. W. Fraley, his son, staying a portion of the time with either; and that, not long after making the move, to wit, on 19 October, 1898, he executed to Jane E. Stokes, the daughter, and G. W. Fraley, the son, the deed in question, conveying to them his home tract, of 109 acres, and ten days thereafter he executed to these same grantees a deed for 40 acres of land in Stanly County, on which there was a mortgage for $300, or over; the two deeds conveying practically all of his property.

There was evidence on part of the plaintiff tending to show mental incapacity on the part of Jacob Fraley, grantor, at the time of execution of these deeds, and of fraud and undue influence on the part of the grantees and of J. F. Stokes, husband of Jane E. Stokes, one of the grantees.

There was evidence for the defendants tending to show that Jacob Fraley, at the time the deeds were executed, was of sound mind and memory, and that he made them of his own mind and will. Among other circumstances offered in support of defendants' position was the fact that, some time before the execution of the deeds, three neighbors were called in, at the instance of Jacob Fraley and the grantees, and perhaps other members of the family (the record not being clear as to this last statement), to consider and decide whether "his property was worth too much, or not, for taking care of him"; and J. D. Austin, one of those who took part in the consultation, was allowed, over plaintiffs' objection, to state that, pursuant to the request of Jacob Fraley and the others, the three men selected met at a given time on the premises and, after consulting over the matter, decided, in substance, that the proposed service—taking care of the old man the remainder of his life—was about a fair equiva-

lent for the property he had. The consultation seems to have been partly in the presence of Mr. Fraley, but the decision was not made in his immediate presence, but he was immediately informed of what their decision was. Plaintiffs excepted.

There was judgment for defendants, and from judgment on the verdict the plaintiffs appealed, having in apt time assigned for error, among other things, the ruling of his Honor on the question of evidence, as indicated, and in charging the jury on the second issue, in part, as follows: "That the plaintiffs were required to make out their contentions by clear, strong and convincing proof."

*R. Lee Wright, P. S. Carlton* and *T. J. Jerome* for plaintiffs.
*Clement & Clement* and *T. F. Kluttz* for defendants.

HOKE, J., after stating the case: There was error in the charge of the court as to the degree and quality of proof required on an issue as to the execution of a deed by fraud and undue influence. The question was directly presented in the case of *Harding v. Long,* 103 N. C., 1, and the principle declared and sustained in an elaborate and learned opinion by *Associate Justice Avery,* that, on the issue indicated, the plaintiff was required to establish the allegation to the satisfaction of the jury by the greater weight of the evidence. The main purpose of this decision was to withdraw an issue of this character from the principle announced in *Ely v. Early,* 94 N. C., 1, that in a certain class of cases, notably where it was sought to correct or alter a written deed, or superimpose a trust thereon by parol, the proof must be clear, strong and convincing, and place it within the rule which ordinarily obtains in the determination of civil issues—that is, by the preponderance or greater weight of the evidence; the language of the opinion on the point in question being as follows: "But, on the other hand, when the relief demanded by a party is that a deed shall be declared void because its execution was procured by false and fraudulent representations or undue influence, or that it was executed with intent to hinder, delay or defeat creditors, the allegations material to establish the fraud must be *proven, so as to produce belief of their truth in the minds of the jury, or so as to satisfy the jury of their truth, or to the satisfaction of the jury.*"

In saying here that fraud must be proven to the satisfaction of the jury, etc., the learned justice was only describing or defining the result to be attained in the mind of the jury, and did not, as stated, intend to lay down any special rule of proof differing from that usually applied in the determination of civil issues. This interpretation of the words, "proof to the satisfaction of the jury," is fully supported in a later opinion of the Court, in *Chaffin v. Manufacturing Co.*, 135 N. C., 95, where, in an action to recover for damages caused by the erection and maintenance of a dam, the trial judge had charged the jury that "It is not sufficient for plaintiffs to show that their land has been damaged; they must further prove to the satisfaction of the jury that this damage was caused by the erection of the dam." It was objected that this required of plaintiffs a greater degree of proof than the law imposed upon them; and *Justice Walker,* in disallowing the exception, said: "The use of the word 'satisfied' did not intensify the proof required to entitle the plaintiffs to their verdict. The *weight* of the evidence must be with the party who has the burden of proof, or else he cannot succeed. But surely the jury must be satisfied or, in other words, be able to reach a decision or conclusion from the evidence and in favor of the plaintiff which will be satisfactory to themselves. In order to produce this result, or to carry such conviction to the minds of the jury as is satisfactory to them, the plaintiff's proof need not be more than a bare preponderance, but it must not be less. The charge, as we construe it, required only that plaintiffs should prove their case by the greater weight of the evidence."

In *Neal v. Fesperman,* 46 N. C., 446, the Court, by *Pearson, J.,* in stating the true rule in civil cases, said that "The party affirming a fact must prove it to the satisfaction of the jury, because the *'onus probandi'* is upon him. If he does prove it to the satisfaction of the jury, it is settled that, in civil actions, he is entitled to a verdict in his favor upon the issue." And intimation of like tenor is given in *Ferral v. Broadway,* 95 N. C., 551.

There was error, therefore, in the charge of the court on the second issue, as to the degree of proof required. It is urged by

defendants that this should be regarded as harmless error, for the reason that there was no evidence presented in favor of plaintiffs' position sufficient for a jury's consideration; but we cannot so hold. At this stage of the action we do not think it desirable to state in detail the testimony, which makes only for plaintiffs' claim, but will say, in general terms, that we have carefully considered the entire evidence, and are of opinion that plaintiffs are entitled to have their cause submitted to the jury, under a correct and proper charge, and that the mistake, in the respect indicated, constitutes reversible error.

As the case goes back for a new trial, we deem it proper to say, further, that the court below made a correct ruling as to the evidence of J. D. Austin, admitted over plaintiffs' objection. It appears that at some time prior to the execution of the deed in question, and with a view to its execution, this witness, with two others, was called in by Jacob Fraley, the grantor, and the grantees, to consider and decide whether the property owned by Jacob Fraley and to be included in the deed was too much for taking care of him and the payment of his debts, amounting to about three hundred dollars. The persons called in met on the premises, and, having considered the matter, decided that one was about a fair equivalent for the other; and while Jacob Fraley, it seems, was not present at the precise time when the decision was made, he was then and there immediately informed of the conclusion reached, and the deed was afterwards executed for the consideration indicated. This decision, followed by the immediate announcement of it to Jacob Fraley, under the circumstances presented, was admissible as part of the *res gestæ*—not as conclusive on the question decided, but as a circumstance occurring as a part of an entire transaction which resulted in the execution of the deed, and in any event its announcement to the grantor was relevant as an independent fact in the *res gestæ* and as tending to affect the mind of the grantor in reference to the execution of the deed.

It is said by an intelligent writer (Chamberlayne), in his notes to Taylor's Evidence, 391 (1), that "It would probably be difficult and perhaps impossible to give a wholly satisfactory definition of the term *res gestæ,* and possibly this very ambi-

guity constitutes no small part of the attractiveness of the phrase." After this comment the writer makes the statement that "Legal liability in any case is predicated upon the existence of some particular transaction or state of affairs, and it is this group of facts or events which make up its *res gestœ*."

And Greenleaf on Evidence, sec. 108, after making comment not dissimilar as to any satisfactory definition of the term, intimates that the phrase *res gestœ* consists of the principal fact and surrounding circumstances consisting of kindred facts materially affecting its character and essential to be known in order to a right understanding of its nature.

And both of these authors, and others of repute, lay it down as essential to the inclusion of a given fact, within the meaning of the term, that it should be cotemporaneous with the principal fact and so connected with it as to illustrate its character. And this term, "cotemporaneous," does not always of necessity refer to any single or ultimate fact, however important to any precise or definite time; for a "transaction" may, and not infrequently does, include a series of occurrences extending over a great length of time, and a relevant fact in any one of them, and until the close of the matter, may come within this term, "cotemporaneous," and constitute a part of the *res gestœ*. *Greenleaf v. Taylor, supra;* Brander on Evidence, 325; *Knox Co. v. Bank,* 147 U. S., 90; *Ahern v. Goodspeed,* 72 N. Y., 108. In this last case, it was held: "Representations made by one offering to sell property to another negotiating therefor are part of the *res gestœ* and binding upon the maker, although a bargain is not concluded at the time, if afterwards, as a continuation of the negotiation, the person to whom they were made becomes a purchaser." And so it is here.

The ultimate fact of the execution of the deed is not an important or controlling fact in this inquiry, nor the point of time to which the admission of testimony must be necessarily referred. It is not even the issuable fact, for the execution of the deed is admitted, and the issuable fact is whether the grantor executed the deed of his own mind and will or was induced to do it by fraud and undue influence; and any fact taking place in the treaty between the parties which resulted in the execution of

In re Bowling.

the deed, and any relevant fact occurring at any time during the treaty, tending to throw light upon the transaction, which was intended and reasonably calculated to affect the mind of the grantor, in reference to the execution of the deed, would be competent as part of the *res gestæ,* or an independent fact in the *res gestæ,* and so admissible in evidence.   And see Chamberlayne's Best on Evidence (Int. Ed.), p. 463, 1893-'94, where the annotator puts down as an exception to the rule excluding facts which are *res inter alios acta* such acts as reasonably tend to show the "existence of knowledge, intent and motive, or any bodily or mental state whatever, in any case, when the existence of such knowledge, intent or state is a fact in issue or a fact relevant thereto."

On authority and the reason of the thing, we hold that the decision and its announcement to the grantor were properly received.

For the error in the charge there will be a new trial on all the issues, and it is so ordered.

New Trial.