HERALD & GLOBE ASSOCIATION *v.* CLERE CLOTHING COMPANY
ET AL.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 4, 1912.

*Chattel Mortgages—Parties—Affidavit—Sufficiency—"Transaction"—Foreign Corporations—Right to Sue—"Action."*

The affidavit to a chattel mortgage must conform to the purpose of
the mortgage and verify the truth, justice, and validity of the debt
or other liability sought to be secured thereby.

A "transaction" is a group of facts so connected as to be properly
denoted by a single legal name, regardless of whether they were
done in one day, at one time, or at one place.

Though the word "immediately" in strictness excludes all mesne time,
yet, to effectuate the deeds and intents of parties, it shall be
construed such convenient time as is reasonably requisite for
doing the thing contemplated.

Where a person, in order to assist a firm to settle with its creditors,
took a mortgage on its stock of goods to secure $1,700 specified in
the firm's promissory note, and, "as part of the same transaction,"
upon execution and delivery of the note and mortgage, delivered
to the mortgagors' attorney the mortgagee's personal checks, pay-
able to the mortgagors' various creditors, part of which were filled
out and mailed the same day, and the rest within a few days and
as soon as the correct amounts were ascertained, and all were
paid by the mortgagee on presentment, the amount so paid being
$1,650, which, with a previous debt due the mortgagee for cash
loaned, exceeded the sum for which the mortgage note was given,
the affidavit attached to the mortgage and reciting that the mort-
gage was made to secure the debt specified in the condition thereof,
and for no other purpose, and that the same was a just debt,
honestly due and owing from the mortgagor to the mortgagee,
sufficiently conformed to the purpose of the mortgage and verified
the justice and validity of the debt sought to be secured thereby.

Where, before a firm executed a mortgage on its stock of goods to secure money advanced to enable it to settle with its creditors, one of those creditors agreed with the mortgagee to protect him for all money so advanced and that, if the firm did not arrange a settlement, the creditor would take over the mortgage and pay the mortgagee the amount due thereon, which it did, and it did not appear but that the mortgagor was a stranger to that agreement, the mortgage was not invalid as a mortgage executed to a person other than the person to whom the debt was actually owing, as the consideration of the note moved from the mortgagee and the promise was made to him.

P. S. 776, providing that no foreign corporation shall maintain any "action" in this State upon a contract made by it therein, unless it procures a designated certificate, cannot preclude a foreign corporation that is assignee of a chattel mortgage from foreclosing the mortgage by official sale under the statute, as that proceeding is not an "action," which is a demand of a right in a court of justice.

APPEAL IN CHANCERY. Heard on the pleadings and an agreed statement of facts, at the September Term, 1911, Rutland County, *Miles*, Chancellor. Decree dismissing bill with costs to the defendant. The orator appealed. The opinion states the case.

*M. C. Webber* for the orator.

*Lawrence, Lawrence & Stafford* for the defendant.

ROWELL, C. J. This is a bill in chancery by an attaching creditor of Hogan Brothers, to enjoin the foreclosure by the defendant company by official sale under the statute, of a chattel mortgage given to Henry O. Carpenter by the Hogans and afterwards assigned to said company.

Before and on June 13, 1908, the date of said mortgage, the Hogans were sellers of ready-made clothing and furnishing goods in the city of Rutland. They had for sometime been and then were considerably involved and unable to meet their liabilities, and wanted to avoid bankruptcy proceedings. They owed the mortgagee $150 that he had loaned them to meet a pressing necessity, and owed the defendant company about $1,383 on

account of merchandise purchased of it. They applied to the company to assist them to settle with their creditors and to furnish the money for that purpose; but the company declined, and suggested that they get some one in Rutland to do it, and in this connection Mr. Carpenter's name was mentioned, and the company suggested that they see him, which they and a representative of the company did, and the result was that a general understanding was reached by the parties that Carpenter should assist them to settle with their creditors for twenty-five cents on the dollar, and that he should furnish the money therefor, in consideration of which and of the fact that the $150 due him was a temporary loan to meet an emergency and a special accommodation, it was agreed that that should be paid in full as well as all the money he should pay out for the purpose named, and that he should be secured therefor by a chattel mortgage on the Hogans' stock of goods. This arrangement was made about the first of May, 1908, and thereupon Lawrence & Lawrence, attorneys for the Hogans, entered upon the business of procuring the desired settlement, and with the assistance of Carpenter they succeeded in getting all but two or three of the creditors to accept the offer, though there were a few who agreed to accept with whom the amount due had not been fully adjusted at the time of the execution of the mortgage.

It was estimated at the time the general arrangement was entered into that it would take about $1,700 to make the settlement and pay the attorneys $100 for their services in the matter.

The mortgage was executed and recorded the day of its date, and covered the mortgagors' stock of goods then in their store and all after acquired goods that they should buy and place therein, and was conditioned for the payment of $1,700 justly due and owing from the mortgagors to the mortgagee, specified in a certain promissory note of even date therewith for that sum, payable to the mortgagee or order on demand; and the affidavit is that the mortgage was made for the purpose of securing the debt specified in the condition thereof and for no other purpose whatever, and that the same is a just debt, honestly due and owing from the mortgagors to the mortgagee.

Upon the execution and delivery of the note and mortgage, and as a part of the same transaction, the mortgagee made out and left with the mortgagors' attorneys, to use for the mortgagors, his checks, duly drawn and signed by him, payable to the

various creditors of the mortgagors, most of them being filled out with the amount going to them, but a part of them being left blank as to the amount, as the exact amounts to be paid to a few creditors had not been adjusted. The checks in which the sums were filled out amounted to about $1,200, and they were mailed to the creditors the same day and after the execution of the mortgage. Subsequently, and within a few days, the amounts were ascertained and written into the rest of the checks and the checks forwarded to those creditors. Thus there were used and sent to the various creditors of the mortgagors, checks amounting to more than $1,650, which, with the $150 due to the mortgagee, exceeded the sum of $1,700 for which the mortgage note was given.

These checks were drawn against the mortgagee's own personal account, which he kept good to meet them, and they were paid thereout when presented. Most of the checks were sent by mail, and some of them were not presented for payment for some considerable time after the mortgage was executed. A release of the mortgagors was indorsed on each check, and signed by the payee.

The orator claims that the mortgage is void for that the true character of the note is not disclosed therein and the affidavit does not verify the truth, justice, and validity of the debt or liability sought to be secured thereby.

It is true, as claimed, that the affidavit must conform to the purpose of the mortgage, and verify the truth, justice, and validity of the debt or other liability sought to be secured thereby. *Nichols* v. *Bingham,* 70 Vt. 320, 40 Atl. 827. There the purpose of the mortgage that was held invalid was, to secure the mortgagee for $700 then recently advanced to the mortgagor, and, perhaps, further to secure him for a thousand dollar note secured by a prior mortgage, and to secure future advances and past and future indorsements. To accomplish this, the mortgagee took the five thousand dollar note specified in the condition of the mortgage, and the affidavit thereto appended was, that the mortgage was taken to secure that debt and for no other purpose, and that the same was a just debt, etc., which was not true, for the mortgagee was not at that time under much if any liability for the mortgagor as indorser, nor did he afterwards incur such liability to much if any extent, nor advance

but little if anything, and on complaint of a creditor, indorsed the note down to $700, his real claim thereon.

The orator likens this case to that, but we think it different, and that the true character of the note is disclosed on its face, and consequently that the affidavit conforms to the purpose of the mortgage, and properly verifies the note, because the giving of the note and the mortgage and the giving and issuance of the checks were practically parts of the same transaction, namely, the execution and completion of the contract between the parties to the mortgage.

Mr. Stephen defines a transaction to be a group of facts so connected as to be referred to by a single legal name; as, a crime, a contract, a wrong, or other subject of inquiry that may be in issue. Steph. Dig. Ev., Chase's Ed. 8. It is said in *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.,* 63 Conn. 551, 29 Atl. 76, 25 L. R. A. 856, that this notion of completed action strongly characterizes the word in the Latin language from which, through the Normans, we derive it, although we gain little assistance otherwise from these sources in determining its meaning, since both the Romans and the French have used it mainly as a juridical term to signify an agreement of parties in settlement of affairs. It has been held that every contract may be said to be a transaction, and in *First National Bank* v. *Windsor's Exrs.,* 111 Ky. 135, 147, 63 S. W. 461, 464, it is said that a transaction may not be confined to what is done in one day, nor at one time, nor at one place; that immediateness is tested, not by closeness of time, but by logical connection. So in *Pybus* v. *Mitford,* 2 Lev. 77, it is said that though the word *immediately* in strictness excludes all mesne time, yet to make good the deeds and intents of parties, it shall be construed, such convenient time as is reasonably requisite for doing the thing. This construction was approved and applied in *Thompson* v. *Gibson,* 8 M. & W. 287; and the cases generally are to the same effect. 21 Cyc. 1731.

Now here there was no want of immediateness in completing the transaction by the intervention of an interval of time, except as to the few checks in which the amount was blank, for the agreed facts say that upon the execution and delivery of the note and the mortgage, and as "part of the same transaction," which we take to mean on the same occasion, all the checks were made out and left with the attorneys of the mort-

gagors for their use, and that most of them were used that day, so that to this extent certainly there was what the parties treated as payment to the mortgagors then and there; and when the remaining checks were filled up and sent out a few days afterwards, which, for aught that is suggested, was as soon as it could reasonably be done, the intent of the parties in respect of payment to the mortgagors was made good, and the last of the group of facts that constituted the transaction was accomplished and the contract completed, and then the mortgagors had received from the mortgagee in the manner agreed more than the full amount of the note specified in the condition of the mortgage; and so the affidavit conforms to the purpose of the mortgage, and verifies the truth, justice, and validity of the debt sought to be secured thereby.

Before and at the time the mortgage was executed, it was agreed between the defendant company and the mortgagee that the company should protect the mortgagee for all money he should furnish the Hogans to settle with their creditors, and that if the Hogans did not procure the money elsewhere, nor otherwise arrange the matter to the satisfaction of the mortgagee, the company would take over the mortgage and pay the mortgagee the amount then due thereon, which it did the 28th of July, 1909. The orator claims that this made the transaction one between the company and the Hogans and not between the mortgagee and the Hogans, and consequently that the mortgage was given to a party other than the real one to which the debt was owing, and therefore is invalid. This claim is untenable, for the consideration of the note moved from the mortgagee and the promise was made to him, and for aught that appears the Hogans were strangers to the agreement between him and the company.

The orator also claims that under the agreements of January 25, 1908, and July 1, 1908, as well as by taking an assignment of the mortgage and attempting to foreclose it, the company being a foreign corporation, was and is doing business in this State in contravention of the statute in such case made and provided, it not having procured the requisite authority therefor. But if this claim is well founded, which we do not decide, it makes no difference, for the only sanction of the statute for a violation of it that is available to an individual is, inability to maintain an "action" in this State on a contract

made here, and the proceedings to foreclose this mortgage are not an *action* within the meaning of the statute.   Thus, in *State* v. *Brandy,* 43 Vt. 297, an action is defined to be the demand of a right in a court of justice.   The word *suit* implies a proceeding in a court of justice.   *Nichols* v. *Bingham,* 70 Vt. 320, 324, 40 Atl. 827.   In *Burlington* v. *Traction Co.,* 70 Vt. 491, 496, 41 Atl. 514, the words "suit" and "civil cause," used in a statute, are construed to include only actions that are commenced in a court of justice, or that may come before such a court by appeal from the decision of the tribunal before which they are commenced, and such other proceedings as are required to be commenced before tribunals not courts, as a condition precedent to giving courts jurisdiction of the matter therein involved; but not to include proceedings before a board whose functions are merely administrative or ministerial, although it may possess so much of judicial function as may be involved in making inquiry; nor to include a board whose decision is final.

Now here the foreclosure proceedings were not commenced in a court of justice, nor can they go to such a court by appeal, nor were they required to be commenced before a tribunal not a court in order to give a court jurisdiction of the matter involved therein; but they were commenced, it seems, under the statute for foreclosing chattel mortgages, whereby the property is to be taken and sold at public auction by a public officer, who is to make return of his doings and file the same in the town clerk's office in the town where the mortgage is recorded, and dispose of the proceeds of the sale as required by statute, and then the proceedings are finally ended.

And if the proceedings were commenced under the agreement for sale contained in the mortgage and not under the statute, as the company claims, all the more would they not be an action within the meaning of the statute.

*Decree affirmed and cause remanded.*