[Civ. No. 44429. First Dist., Div. Three. Jan. 25, 1979.]

AGNES DOMBALIAN, Plaintiff and Respondent, v.
DAVID H. FOX, as Real Estate Commissioner, etc.,
Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Charles X. Delgado, Deputy Attorney General, for Defendant and Appellant.

Truce, Veal & Jackson, Walter Truce, Windell & Denkers, Carl T. Windell and William Denkers for Plaintiff and Respondent.

**OPINION**

**HALVONIK, J.**—Edward T. Powers, a licensed real estate broker, bilked respondent and her late husband. There were two stages to this operation,

both involving one listing agreement for the same piece of real estate. The question is whether this fraud occurred in one transaction or two. Where there is an uncollectable judgment against a licensed real estate broker based on a fraudulent transaction, Business and Professions Code section 10471 permits recovery from the Real Estate Fund of up to $10,000 for each transaction.

In August of 1964 the late Henry Dombalian and respondent Agnes Dombalian listed improved real estate with Powers at a price of $50,000, its fair market value. Instead of exposing the property to the market, as his professional obligations required him to do, Powers cheated his clients. In May of 1965 he submitted the only offer he was ever to submit and it was a fraudulent one. The offer, for $42,500, was submitted in the names of Raymond and Cora Chrystal but Powers himself was the actual and undisclosed principal. Relying on Powers' representation that this was the best they could do, the Dombalians accepted. Powers not only got the property, at a savings of $7,500, but pocketed a $1,300 commission fee. Unsatisfied by the first dip of his beak, Powers then forged the Dombalians' initials on some escrow instructions, enabling him to convert $28,731.51 of their money to his use.

██ Respondent vigorously contends, and the court below held, that Powers defrauded them in the course of two separate transactions. But if a transaction can encompass more than one occurrence in the course of a relationship, and we think that it can, then these occurrences, involving the same parties and the same listing agreement for the same piece of real estate, are not necessarily two transactions.

The word "transaction" bobs up throughout the law from civil pleading through criminal punishment. Definitions in one area so rarely have utility in another that the Supreme Court, in *Wachs* v. *Wachs* (1938) 11 Cal.2d 322, 325-326 [79 P.2d 1085], wondered whether "transaction" was the kind of word Justice Holmes had in mind when he said "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." (*Towne* v. *Eisner* (1918) 245 U.S. 418, 425 [62 L.Ed. 372, 376, 38 S.Ct. 158].)

██ Unless context unambiguously requires it, however, the word does not usually refer to a single event. "It is not confined to what was done at one time or in one day or at a single time or place." (*Mayer* v. *Klug* (1919) 10 Ohio App. 303, 305. Accord, *Herald & Globe Assn.* v. *Clere Clothing*

*Co.* (1912) 86 Vt. 141, 145 [84 A. 23, 25].) It "may, and not infrequently does, include a series of occurrences extending over a great length of time . . . ." (*Fraley* v. *Fraley* (1909) 150 N.C. 501, 506 [64 S.E. 381, 383].)

The constant theme is that the word is employed, usually, not to describe any particular event but the relationship among events. " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." (*Moore* v. *N. Y. Cotton Exchange* (1926) 270 U.S. 593, 610 [70 L.Ed. 750, 757, 46 S.Ct. 376, 45 A.L.R. 1370].)

As amorphous as the word is, we should be going against its grain were we to hold that each separate event involving a listing agreement for a single piece of property involved a different transaction. And the Legislature has made it plain that the grain is not to be resisted. In 1969 (Stats. 1969, ch. 729, § 2, p. 1463) it amended section 10471 by adding the proviso that "nothing shall be construed to obligate the fund for more than ten thousand dollars ($10,000) per transaction regardless of the number of persons aggrieved or parcels of real estate involved in such transaction." Obviously, the Legislature intended that a "transaction" could include more than one event.

Respondent says, and it is certainly true, that Powers' faithlessness gave rise to more than one cause of action. But "Care should be taken to distinguish between 'transaction' and 'cause of action.' " (*United States* v. *Pan-American Petroleum Co.* (9th Cir. 1932) 55 F.2d 753, 776.)

Respondent urges that section 10471, a remedial statute, be given a "liberal construction" and quotes supportive language in that spirit from *Antonio* v. *Hempel* (1977) 71 Cal.App.3d 128 [139 Cal.Rptr. 309] and *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657 [121 Cal.Rptr. 794]. Liberality, like transaction, is a concept that takes shape from its context. *Antonio* allowed postjudgment interest to be counted within the $10,000 limit and *Nordahl* gave costs incurred to obtain judgment the same benefit. But no decision has permitted *additional* claims on the theory that the liberality due remedial statutes compelled it. *Wolff* v. *Hoagland* (1970) 11 Cal.App.3d 227 [89 Cal.Rptr. 778] disallows double recovery for community property. *Middelsteadt* v. *Karpe* (1975) 52 Cal.App.3d 297 [124 Cal.Rptr. 840] narrowly interprets "aggrieved person" and disapproves recovery by a broker who had suffered from the fraud of a saleswoman. *Fox* v. *Prime Ventures, Ltd.* (1978) 86 Cal.App.3d

333 [150 Cal.Rptr. 202] prohibits double recovery for one transaction where two licenses are involved, one held by the president of a corporation who "did nothing in his individual capacity he could not have done without a license." (86 Cal.App.3d at p. 336.)

Respondent had a listing agreement with Powers regarding a particular piece of property—that agreement was the transaction between them. His fraudulent acts were part of that single transaction.

Judgment is reversed with directions to enter judgment in accordance with the views herein expressed.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied February 23, 1979, and respondent's petition for a hearing by the Supreme Court was denied March 22, 1979.