## DANIEL TARBELL v. DANIEL C. JONES.

*Chattel Mortgage not Valid if not given to secure Debt from Mortgagor to Mortgagee. The Oath must be True. Attaching Creditor. Trover. Fraud.*

To consitute a valid chattel mortgage, if given to secure a debt, it must be one due from the mortgagor to the mortgagee; if a liability, it must be a liability incurred by the mortgagee for the mortgagor; or any other agreement, it must be one between the parties ·to the mortgage; the oath must conform to the purpose of the mortgage, verifying the truth, validity, and justice of the debt; and the debt or obligation be specifically described and with substantial truth; thus, the affidavit in the mortgage alleging that the debt secured was "due and owing," &c., was wholly false. But the plaintiff insisted that he had an equitable right to the property, claiming that, prior to the execution of the mortgage he had agreed to loan the mortgagor $1,500—to be secured on the printing press in question; that at the time the mortgage was given he had advanced about $200, and that it was understood this was secured by the mortgage; that he, the plaintiff, entered into an arrangement with one T. to pay such portion of the $1,500, as he himself should be unable to furnish, and so the note and mortgage were executed to T., and placed in the hands of a third party, to become the property of T. when the money was paid; that T. never paid any thing; that the mortgagor fraudulently misrepresented the value of the press; that in a short time it was attached and sold by the defendant, an officer, on an execution in favor of an attaching creditor against the mortgagor; that the plaintiff never advanced anything more on the note; that the holder of the note and mortgage, by direction of the mortgagor, delivered them up to the plaintiff, though there was no transfer made by T. *Held*, that the chattel mortgage was invalid, and that an action of trover would not lie.

TROVER for a printing press. Plea, the general issue with notice. Trial· by jury, Windsor County, May Term, 1882, ROWELL, J., presiding.

The court on the testimony of the plaintiff directed a verdict for the defendant. The case appears in the opinion.

*Hunton & Stickney*, for the plaintiff.

The note was valid in the hands of the plaintiff, and binds Pratt to pay to him the amount advanced. *Bank of Burling-*

*ton* v. *Beach*, 1 Aik. 62; *B nk of Middlebury* v. *Bingham*, 33 Vt. 621, 634; *Bank of Montpelier* v. *Joyner*, Ib. 481; *Keith* v. *Goodwin*, 31 Vt. 268; *Bank* v. *Humphrey*, 36 Vt. 554; Rob. Dig. pp. 105, 190.  But the mortage is an incident of the debt, and should be held to secure its payment. *Keyes* v. *Wood*, 21 Vt. 331.  The plaintiff being the owner of the note should have the benefit of the mortgage.  *Merrill* v. *Merrill*, 53 Vt. 74.

The statute in respect to mortgages of personal property should be construed in reference to the law in respect to bills and notes and the assignment of choses in action as it existed at the time the statute was enacted.  The Revised Laws seem to favor such construction.

We see no reason why one person may not take a note and a chattel mortgage to secure the payment of it to himself in trust for another, in the usual form.  The property having been sold, trover is the proper remedy.  *Swift* v. *Mosely*, 10 Vt. 208; *Hill* v. *Larro*, 53 Vt. 629; 38 Mich. 358; 71 N. Y. 61; 57 Ala. 323; 88 Ill. 58; 8 Hun, 566; 37 Ala. 371; 2 Wis. 322; 6 Barb. 133.

*Lamb & Tarbell* and *D. C. Denison & Son*, for the defendant.

The plaintiff is not entitled to recover unless at the time of the attachment he had the title to the press, or the right of possession.  The chattel mortgage was running to Thayer, and executed according to the form of the statute.  If Tarbell had any right to the property, it must have accrued through the Thayer mortgage; and under no circumstances whatever, could Tarbell maintain an action in his own name, for the conversion of the property, until a valid mortgage had been assigned to him by Thayer, and the assignment recorded; and until that was done the suit for the conversion must have been in the name of Thayer.

But Thayer himself never owned the note and mortgage.  No consideration was paid for them; hence, Thayer could not maintain an action for the conversion, and much less the plaintiff.  Thayer never became entitled to the note and mortgage; and it would have been a gross fraud in him to have assigned them.

Tarbell *v.* Jones.

If the note had been valid, and the stated consideration paid for it, Tarbell then could not have maintained an action for the conversion of the property, in his own name, till after a regular transfer of the note and mortgage from Thayer to Tarbell and that transfer recorded in the town clerk's office, although the note was payable to bearer.

The opinion of the court was delivered by

VEAZEY, J. The material facts which the plaintiff's evidence tended to prove and upon which the County Court directed a verdict for the defendant, were as follows:—One Pratt applied to the plaintiff Tarbell for a loan of $1,500, to be used in the payment of the printing press and the other material in question, which he represented he had bought at the price of $3,000, and had paid $1,500 thereon; and proposed to give Tarbell a chattel mortgage of the press as security for the loan. Tarbell agreed that upon the press and material for a newspaper and job office being set up in Tarbell's building in South Royalton, costing not less than $3,000, he would let Pratt have the $1,500, taking the mortgage as security. Tarbell made a lease of the building to Pratt, and about the middle of March the press came and was set up in this building. When it came Tarbell assumed and subsequently paid the freight bill at Pratt's request as a part payment on said loan. Tarbell also boarded Pratt and furnished him tickets on the railroad, and help, all on account of said $1,500. Pratt represented that he should want to make a payment of $500 within thirty days. Tarbell arranged with Ephraim Thayer to furnish the money for this loan so far as Tarbell should be unable to furnish it himself.

On the 31st day of March, Pratt executed a note of $1,500, running to said Thayer or bearer, and, on the second day of April, under an arrangement with Tarbell, put the note into the hands of one Winslow to hold, the latter making a memorandum saying that the note was to be the property of said Thayer when he should pay to said Pratt the sum of $1,500. On the same 31st day of March, Pratt executed a chattel mort-

gage of this press and printing material to said Thayer as security for this note, and caused the same to be duly recorded. On the second day of April, Tarbell let Pratt have $50 in money on account of said promised loan, on Pratt's putting the note into the hands of Winslow as aforesaid. Pratt told Tarbell from the first that whatever the latter advanced in starting this enterprise, by way of freight, board, tickets, etc., should count on this loan, to be secured by the mortgage; and when the said $50 was advanced, promised the same as to that. All the items except the $50 were furnished before the note and mortgage were executed. The whole amount of the plaintiff's claim for what he had thus furnished and paid to Pratt, including the first quarters rent, was $226.74. Thayer never paid anything. The press was bought of Hoe & Co., and on the 9th of April that firm caused it to be attached by the defendant on a writ in their favor against said Pratt, to recover the purchase price. The press was then, as it had been, in Pratt's possession. It then turned out that Pratt had deceived Tarbell in the whole transaction. He had bought the press for $1,800 instead of $3,000, and had paid nothing on it. He finally gave an order on Winslow to deliver the note to Tarbell, and on the 30th of April, Tarbell obtained it and the mortgage and has held them ever since, but no transfer or assignment was made by Thayer. The record title remained in him. When Tarbell discovered the fraud of Pratt, he declined to advance any more money. No money was paid to Pratt when the note and mortgage were executed, and Pratt held the note until April 2nd, when he passed it to Winslow as aforesaid. Tarbell testified that the note was written as above stated with the view of having it good in the hands of the bearer, whether Thayer or Tarbell owned and held it; and that if it was in the hands of Winslow it would be held for the interest of either or both as the case might be. The suit of Hoe & Co. went to judgment and the property was sold by the defendant as the officer holding the process. Thereupon Tarbell proceeded against the officer by this suit in trover.

The plaintiff put in evidence said note and mortgage, against the defendant's objection.

Upon the evidence tending to prove the foregoing facts, the plaintiff rested. The court thereupon, on motion of the defendant, directed a verdict for the defendant, to which the plaintiff excepted.

This chattel mortgage was in due form according to the requirements of our chattel mortgage act. It was conditioned only for the payment of said note to Thayer. It nowhere described any other debt, or referred to Tarbell as having any interest in the security. It contained the affidavit of Pratt and Thayer in these words; " We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the condition thereof, and for no other purpose whatever, and that the same is a just debt, honestly due and owing from the mortgagor to the mortgagee." They signed and swore to this affidavit. This affidavit is exactly according to the requirement of section 1967, R. L. Section 1965, of the same chapter, R. L., provides that personal property shall be subject to mortgage *agreeably to the provisions of this chapter.*

At no time prior to this attachment was there any debt whatever due from the mortgagor to the mortgagee Thayer. The affidavit was false in every particular. The validity of this mortgage as against the right of an attaching creditor, must be determined under the provisions of our chattel mortgage act. The case has been argued in behalf of the plaintiff, upon the general equity principles that pertain to real estate mortgages in this State and chattel mortgages in some other States where their statutes do not contain the restrictive provisions found in our statutes.

The Vermont statute differs but slightly from that of New Hampshire. The oath is nearly identical.

Under the New Hampshire statute it is held that a mortgage cannot be given to secure the debt of a third person. If given to secure a debt it must be a debt from the mortgagor to the mortgagee; if to secure a liability, it must be a liability incurred

by the mortgagee for the mortgagor; and if to secure any other agreement, it must be one.between the parties to the mortgage. The oath must conform to the purpose of the mortgage, and must be varied to suit the obligation secured. It must verify the truth, validity and justice of the debt, or of the liability, or of the agreement, as the case may be. *Parker* v. *Morrison*, 46 N. H. 280. Although a note for a given sum may be valid as an indemnity for a contingent liability, if it be secured by mortgage, the true character of the note as an indemnity must be stated in the condition; if not so stated and verified by oath, the mortgage will be invalid against creditors. *Belknap* v. *Wendell*, 31 N. H. 92; Jones, Ch. Mort. 237.

The Vermont act, section 1969, is as follows: "If such mortgage is given to indemnify the mortgagee against liability assumed, or to secure the fulfillment of an agreement other than the payment of a debt due from the mortgagor to the mortgagee, such liability or agreement shall be stated specifically in the condition of the mortgagee, and the affidavit shall be so far varied as to verify the validity and justice of such liability or agreement."

The mortgage utterly failed to comply with these requirements so far as it was intended to secure Tarbell's debt. Tarbell had neither possession nor title. As between him and Pratt and Thayer, his testimony tends to show he had an equity in the property, but as against an attaching creditor he had nothing effectual. We think that under our statutes, substantial truth specifically told is an essential requirement in describing the debt or obligation to be secured, in order to constitute a chattel mortgage valid as against creditors. The evident purpose of the statute was to afford a convenience without an opportunity for fraud. A strict compliance secures this result.

Judgment affirmed.