EDMUND C. MOWER, TRUSTEE IN BANKRUPTCY *v.* JAMES D.
McCARTHY AND JAMES B. BRODIE.

January Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, POWERS, and MILES, JJ.

Opinion filed August 14, 1906.

*Trustee in Bankruptcy—Title to Bankrupt's Property—Re-
    plevin—Verbal Chattel Mortgage—After-Acquired Prop-
    erty—Possession of Mortgagee—Effect—Federal Bank-
    ruptcy Act—Evidence—Admissions of Bankrupt—Con-
    spiracy—Admissions of Co-Conspirators.*

A verbal mortgage of chattels to be subsequently purchased by the
    mortgagor is valid between the parties.

Where, after the condition of a verbal chattel mortgage is broken, and
    before the rights of third parties have intervened, the mortgagee
    takes possession of the property covered by the mortgage, but pur-
    chased since it was given, such property is in his possession as
    of the date the mortgage was given.

Defendant's son gave him a verbal mortgage upon a stock of goods
    about to be purchased by the son to establish a retail business,
    and upon all goods subsequently purchased to replenish or increase
    the original stock, as security for the payment of a contemporane-
    ous loan of money wherewith to start the business, and of all
    future loans, with the agreement that defendant might, at any
    time, take possession of the store and goods under his mortgage.
    The son purchased the goods, established the business, and con-
    ducted it for a year and a half, replenishing the stock from time
    to time. Then, defendant, who had made other loans to the son
    under said agreement, the mortgage debt being over due, took
    possession of the stock and store under said mortgage, having
    reasonable cause to believe that the son was then insolvent, but
    not having reasonable cause to believe that his thus taking pos-
    session was intended by the son to give him a preference over
    other creditors. *Held*, in replevin by the son's trustee in bank-
    ruptcy, appointed under proceedings begun about a month after

defendant took possession, that said agreement was a valid common law mortgage; that defendant was in possession of all the property covered by the mortgage as of the date it was given; that the son had no interest in the property, except the right to redeem; and that, therefore, his trustee in bankruptcy had only that right.

It cannot be held, as matter of law, that such a mortgage is fraudulent and void as to the other creditors of the mortgagor. That is a question of fact for the jury.

Neither do such verbal mortgages come within the amendment of 1905 to §60a of the Federal Bankruptcy Act: "Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording of the transfer, if by law such recording or registering is required." That relates only to written instruments required by law to be recorded.

Where a conspiracy is claimed, *prima facie* proof thereof must be made before the admissions of an alleged conspirator can be properly received in evidence against his claimed confederate.

The mere relation of mortgagor and mortgagee, in the absence of evidence of collusion between them to defraud the creditors of the former, does not create such a privity of estate as makes the declarations of one admissible in evidence against the other.

A trustee in bankruptcy is the successor to all the rights which the bankrupt possessed in his non-exempt property; and in replevin by said trustee against a third person to recover such property, the trustee must recover through the bankrupt's title; hence, the bankrupt's declarations against his title to such property, made while it was in his possession and before his bankruptcy, are admissible in evidence in favor of the defendant.

REPLEVIN by a trustee in bankruptcy. Plea, the general issue. Trial by jury at· the March Term, 1905, Chittenden County, *Watson,* J., presiding. Only special verdicts were returned, upon which defendants had judgment for the property replevied, for one cent damages and their costs. The plaintiff excepted.

· It appeared that defendant took possession of the property in question on the evening of April 3, 1903, and that Arthur

McCarthy had no part in that matter, and knew nothing about it till the next morning. Plaintiff offered in evidence the schedules filed by the bankrupt in his bankruptcy proceedings, as tending to show that the verbal chattel mortgage, under which the defendant claimed, never existed; and for the same purpose plaintiff offered certain written statements made by the bankrupt to his creditors, as a basis of credit, and signed by him, stating, among other things, that the goods in question were free from incumbrance. Both these offers were excluded, to which plaintiff excepted. The other facts are fully stated in the opinion.

*E. C. Mower,* and *Powell & Powell* for the plaintiff.

The agreement proved is simply an agreement to give a lien at any time the father might see fit to take possession of the store. No one can convey property, by mortgage or otherwise, which is not in existence at the time of the conveyance. *In re Hunt,* 14 A. B. R. 424; *Matthews* v. *Hardt,* 9 A. B. R. 376; *Burdette* v. *Hunt,* 43 Am. Dec. 289; *Peabody* v. *Landon,* 61 Vt. 328; *Robinson* v. *Elliott,* 21 Wall. 513; *Means* v. *Dowd,* 128 U. S. 273.

This mortgage is void as to the creditors of the mortgagee, under the amendment to § 60a of the Federal Bankruptcy Act. *Wilson Bros.* v. *Nelson,* 7 A. B. R. 142; *In re Klingaman,* 4 A. B. R. 258; *Babbitt* v. *Kelley,* 9 A. B. R. 335; *Myers Bros. Drug Co.* v. *Pipkin Drug Co.,* 14 A. B. R. 477; *Stewart* v. *Platt,* 101 U. S. 731; *Gilbert* v. *Vail,* 60 Vt. 265; *In re Garcewich,* 8 A. B. R. 149; *Thompson* v. *Fairbanks,* 196 U. S. 526.

If the trustee in bankruptcy were the universal successor of the bankrupt, and took the property impressed with all the

liens of the bankrupt, then the claim of defendants might have
some foundation.    But the test of the trustee's right is whether
the property could be taken in execution.   *Collender Co.* v.
*Marshall,* 57 Vt. 232; *Bingham* v. *Jordon,* 79 Am. Dec. 748;
*Briggs* v. *Parkman,* 37 Am. Dec. 89; *Haskell* v. *Merrill,* 179
Mass. 120; *Re Allen's Est.* 65 Vt. 395.

This alleged verbal chattel mortgage and defendant's
possession thereunder, constitutes a preference voidable under
§ 60b of the Federal Bankruptcy Act.   *Benedict* v. *Deshel,*
11 A. B. R. 20; *Sebring* v. *Wellington,* N. Y. Sup. Ct., Appel-
late Div., 6 A. B. R. 671; *Western Tie & Timber Co.* v. *Brown,*
13 A. B. R. 447; *Hackney* v. *Raymond Bros.,* 10 A. B. R.
214; *Johnson* v. *Wald et al.,* 2 A. B. R. 84; *Christopherson* v.
*Oleson,* 102 N. W. 685; *Upson* v. *Mount Morris Bank,* 14
A. B. R. 6; *Peperdine* v. *Nat. Exchange Bank,* 10 A. B. R.
570; *Brownell* v. *Russell,* 76 Vt. 331.

The offered schedules of the bankrupt, and the written
statements signed by him and made to merchants as a basis
of credit, showing that the goods in question were free from
incumbrance, should have been admitted.    *Cox* v. *Eayres,*
55 Vt. 24; *Good* v. *Knox et al.,* 64 Vt. 99; 2 Wig. Ev. §§ 902,
906; *Ramsbottom* v. *Phelps,* 18 Conn. 278; Wig. Ev. §§ 1086,
1087; *Moon* v. *Hawkes,* 2 Aik. 390; *Bullard* v. *Billings,* 2 Vt.
313; *Carpenter, Admr.* v. *Hollister,* 13 Vt. 552; *Miller* v.
*Bingham,* 29 Vt. 82; *Webb* v. *Richardson,* 42 Vt. 472; Wig.
Ev. §§ 1081, 1086, 1779; *Tatman* v. *Humphrey,* 12 A. B. R.
65; *Clayton* v. *Exchange Bank of Macon,* 10 A. B. R. 183;
*Fletcher* v. *Wakefield,* 75 Vt. 263.

*V. A. Bullard,* and *R. E. Brown* for the defendants.

10

The evidence tended to establish a valid chattel mortgage. *McCloud* v. *Wakefield,* 70 Vt. 558; *Thompson, Trus.,* v. *Fairbanks,* 75 Vt. 361.

The trustee in bankruptcy acquired no greater rights in the property than the bankrupt had. *Rice's Assignees* v. *Hulett,* 63 Vt. 321; *Chase* v. *Denney,* 130 Mass. 566; *Etherbridge* v. *Sperry,* 139 U. S. 266.

The declarations of the bankrupt against his interest in the property in question, made while it was in his possession and before his bankruptcy, were admissible against plaintiff. *Rubber Co.* v. *Duncklee,* 30 Vt. 29; *Downs* v. *Belden,* 46 Vt. 67; *Miller* v. *Bingham,* 29 Vt. 824; *Alger* v. *Andrews,* 47 Vt. 238; *Davis* v. *Bank,* 48 Vt. 532; *Wheeler* v. *Wheeler,* 47 Vt. 637; *Bucklin* v. *Beals,* 38 Vt. 653.

TYLER, J.   On August 15, 1901, defendant McCarthy loaned his son Arthur $5,000 with which to purchase a stock of goods and establish a clothing business in Burlington, and afterwards loaned him $2,000 and $1,000 for the same purpose and took his promissory notes for the several sums. When the $5,000 was furnished Arthur gave the defendant a verbal mortgage upon the stock that was then to be purchased as security for the repayment of that loan, and of all future loans that should be made, and it was understood between them that the mortgage should include the fixtures in the store and all goods that should be subsequently purchased to replenish or increase the original stock, and that the defendant might, at any time, take possession of the store and goods under his mortgage.   Arthur had no capital; he carried on the business with the money loaned him by the defendant from August, 1901, till April, 1903.   The defendant and his wife held a lease of the store during the continuance of the busi-

ness.   Arthur paid most of the rent and managed the business in all respects as if it were his own.

On April 3, 1903, the defendant by Brodie, a deputy sheriff, took possession of the store, fixtures, and goods by virtue of his mortgage and upon a writ that he sued out against his son.   All the notes were then due and nothing had been paid upon them but $321.82 on the $1,000 note.

The defendant claimed that he took possession for the purpose of completing his mortgage, and that the property was rightfully in his possession by virtue thereof at the time it was taken from him by the plaintiff in this suit.   The plaintiff claimed that the two McCarthys conspired to defraud the merchandise creditors and to obtain all the property for the defendant and thereby for their mutual benefit.

A petition in bankruptcy was filed against Arthur on May 15, 1903, and he was adjudged a bankrupt on June 6 following.   He was insolvent at the time of the adjudication and his liabilities were far in excess of his assets.

The present action is replevin in which the plaintiff, as the trustee in bankruptcy of the estate of Arthur, seeks to recover the property described in the writ as belonging to the estate, while the defendant claims it by virtue of his verbal mortgage.

Neither of the McCarthys ever informed any of Arthur's creditors of the verbal mortgage nor of the existence of any lien upon the goods.   The creditors had been pressing Arthur for payment before the defendant took possession, and the evidence tended to show that some steps had been taken towards making a sale of the bankrupt's stock and of a pro rata division of the proceeds among the creditors, and that this was with the defendant's knowledge and sanction.

Special verdicts were submitted and the jury found in substance as above stated, that by the agreement relative to the verbal mortgage the defendant was to be secured on the goods, furniture, and fixtures for the money advanced by him, also upon all goods that might be added to the stock until the advancements were repaid; that he was to have a right to take possession of the mortgaged property whenever he saw fit; that he took possession under his mortgage by his agent Brodie, April 3, 1903; that he was in possession of the mortgaged property when the writ in this suit was served; that $1,000 worth of the original stock was then on hand; that when the defendant took possession he had reasonable cause to believe that his son was insolvent, but that he did not have reasonable cause to believe that his thus taking possession was intended by his son to give him a preference over other creditors.

1.   The agreement made by the McCarthys constituted a common law mortgage, which is defined to be an absolute sale of the property by the mortgagor to the mortgagee, subject to be redeemed according to the terms of the contract. *Hutchins* v. *King,* 1 Wall. 53; *Wood* v. *Dudley,* 8 Vt. 430; *Blodgett* v. *Blodgett,* 48 Vt. 32.   So it was held in *Rice's Assignee* v. *Hulett,* 63 Vt. 321, that the giving of security upon chattels, without delivery, is in effect a mortgage at common law and may be valid between the parties, though not in writing.   Jones Chat. Mort. § 2.   An unrecorded mortgage is valid between the parties.   *Gilbert* v. *Vail,* 60 Vt. 261. It is also held that where, as in the present case, it is stipulated that the mortgagor may from time to time sell portions of the mortgaged property and replace it with other property of similar kind and value, and the mortgagee takes possession of it, it is brought under the operation the mortgage as of

the date thereof.  *Peabody* v. *Landon,* 61 Vt. 318.  And in *McCloud* v. *Wakefield,* 70 Vt. 559, it is held that if there is no stipulation to the contrary, the mortgagee may at any time take possession of the mortgaged property, and that having taken possession of the goods covered by the mortgage but purchased after its execution and delivery, such goods come under its cover and operation as of its date.  *Thompson, Trustee,* v. *Fairbanks,* 75 Vt. 361, goes to the extent of holding that a chattel mortgage on after-acquired property, under which the mortgagee has taken possession of such property with the mortgagor's consent, is valid against the mortgagor's trustees in bankruptcy, in the absence of an express finding that such possession was taken for the purpose of affording a preference, though possession was so acquired within four months prior to the date of the mortgagor's petition in bankruptcy, and with knowledge that the mortgagor was insolvent and contemplating bankruptcy proceedings.  This judgment was affirmed in 196 U. S. 516, 49 Law. ed. 577.  This was the holding in *Chase* v. *Denny,* 130 Mass. 566.  These decisions go upon the ground that the mortgagee's title to the after-acquired property relates to the date of the mortgage, and that his taking possession is not the acceptance of a preference but the assertion of a previously acquired right.  After the condition of this mortgage had been broken and the mortgagee had taken possession of the mortgaged property, the mortgagor had no interest in the property other than a right to redeem it, and the trustee in bankruptcy had no greater interest therein than the mortgagor.

It must therefore be held that, unless the present case is distinguishable from the recent cases decided by this Court, the judgment of the trial court must be affirmed.

The rule of law that one cannot convey property that is not in existence at the time of the conveyance, like fish to be caught in the sea, (*Low* v. *Pew,* 108 Mass. 347) does not apply here.     The findings of the jury were that it was understood between the father and son that the former was to be secured on the goods for the money advanced by him, and that this included whatever goods were in the store at the time of the $5,000 loan and all goods that might thereafter be added to the stock; so it is not made clear whether or not all or any part of the original purchase had then arrived.     But assuming that none had arrived when the first loan was made, it was the intent of the parties that the mortgage should attach to the goods when they were placed in the store, and in this respect the goods originally and subsequently purchased stood precisely alike as being subject to the mortgage.

It was held in *Bryan* v. *Lewis,* R. & M. 386, 21 E. C. L. 467, that a sale of goods to be delivered at a future day, when the seller has not the goods nor any contract for them, but expects to go into the market and buy them, is not a valid contract.     But this has been overruled in England, and in this country it is the rule that a person may sell chattels of which he is not at the time the owner or possessor.     2 Kent, 13th ed. 468; 24 Am. & Eng. Ency. 1043 and notes.     A chattel that has ceased to exist or that never had an existence is not the subject of a sale, though an article that has a potential existence, like the natural product or expected increase of property belonging to the seller, may be the subject of an executory contract of sale.     But no question is raised in the present case as to the non-existence of the goods at the time the mortgage was given for the reason that the mortgagee, by virtue of the agreement and the non-payment of the notes, took actual possession of the property and was in possession

thereof when the petition in bankruptcy was filed. *Peabody* v. *Landon,* page 329; *Forsyth Mfg. Co.* v. *Castlen,* 81 Am. St. 28 and note.

*Matthews* v. *Hardt,* 9 A. B. R. 373, is not an authority for the plaintiff, for in that case there was nothing but an agreement to give a lien on property, the parties so treated the transaction, and the lien was not to be enforced until advances to a certain amount had been made. See *Matter of Hunt,* 14 A. B. R. 416.

The plaintiff argues that there is nothing in the case to indicate that Arthur could not have sold the entire stock at any time if he had so chosen, and that the case is therefore brought within the rule recognized in *Wilson* v. *Wallace,* 67 Vt. 646, that an absolute right in the mortgagor to dispose of the property in one transaction for his own benefit vitiates the mortgage. The exceptions do not show such an agreement between the parties to this mortgage, and from what does appear we think the fair inference is that they intended that Arthur should begin and carry on a retail business in the usual manner, keeping up the stock; and he did so conduct the business, for a year and a half from August 3, 1901.

2. The plaintiff further contends that notwithstanding the finding by the jury that the defendant did not have reasonable cause to believe that his taking possession was intended by his son to give him a preference over the other creditors, the transaction was voidable under the Bankruptcy Act. *Peabody* v. *Landon* is reported in 15 Am. St. R. 903, with full notes by Mr. Freeman wherein he speaks of the wide difference in judicial opinions upon this subject, and gives his own opinion that the weight of reason is with those who maintain that such a mortgage as the one here under consideration, with like agreements contemporaneously made, is fraudulent and

void as to subsequent purchasers or creditors of the mort-
gagor; but he says that it is for each state to adopt that line
of decisions which best accords with its own views of public
policy and seems to its judges to be best sustained by reason
and authority.    (See *Humphrey* v. *Tatman,* 198 U. S., 91,
49 Law. ed. 956, 184 Mass.)    The writer cites numerous
authorities in support of his view, and a "respectable number"
which decide that it cannot be held as matter of law by the
court that such a mortgage is fraudulent and void, but that
it is for the jury to determine as a question of fact.    He cites
among other cases *Lister* v. *Simpson,* 38 N. J. Eq. 438, where
the Court closed an able opinion by saying that the mere fact
that a mortgagor retains possession and uses the mortgaged
chattels has never been accepted in that State as conclusive
and unanswerable evidence of fraud.

The plaintiff cites many cases from the Am. Bank. R.
which hold that where a debtor is insolvent within the mean-
ing of the Bankruptcy Act and the creditor has knowledge
of the insolvency, or has such information as would put a
prudent man upon inquiry, and receives a payment, it follows
as a necessary inference that he had reasonable cause to believe
that it was intended as a preference.    *Pepperdine* v. *National
Exchange Bank,* 10 A. B. R. 570, Missouri Court of Appeals,
which states this rule with much force.    The New Hampshire
cases cited by the plaintiff disfavor such agreements, calling
them secret trusts.

*Humphrey* v. *Tatman,* 184 Mass. 361, is an authority
for the plaintiff for it is there held that the preference created
by a mortgagee taking possession of the mortgaged property
under an unrecorded mortgage, within the four months period,
dates from the acquisition of possession under the mortgage.
Knowlton, Ch. J., remarked in his opinion that, "the reason

for the enactment, as it is interpreted, is well illustrated by the fact that the mortgagor in this case, less than four months before the proceedings in bankruptcy, made a statement to certain of his creditors and to commercial agencies that there was no encumbrance on his stock or fixtures,—a statement which was literally true if we look only to the state of the title as against creditors, but wickedly false in its understood meaning if the mortgagee, on the eve of the debtor's bankruptcy, could take all the debtor's property, and leave nothing for the other creditors who had trusted him because of his possessions." *Clayton* v. *Exchange Bank of Macon,* 10 A. B. R. 183 (U. S. C. C. A., Fifth Circuit) is like the Massachusetts case in its facts and in the statement of the law by the Court. But *Humphrey* v. *Tatman* was reversed in 198 U. S. 91, 49 Law. ed. 956.

3.  The plaintiff also contends that the case falls within the amendment of 1905 to section 60a, which is: "Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required;" but this obviously relates to written chattel mortgages which are required by law to be recorded; therefore the amendment does not control here.

In this case, upon the findings of the jury, there was no actual fraud.  All the money that went into the purchase of these goods was the defendant's.  Upon the failure of his son to repay the loans, the defendant had the right to take possession of the goods and preclude the creditors from sharing in the proceeds of their sale, and his taking possession related to the time of the agreement.  This has been the holding of this Court in former cases, and we find no occasion to

depart from it, although the courts in many of the states maintain a different doctrine as has been shown.

4.   The plaintiff contends that there was error in the admission and exclusion of evidence.   The plaintiff claimed in the court below and claims here that the original agreement between the McCarthys was fraudulent; that they conspired to defraud the jobbers, who sold goods to Arthur, by obtaining them for the mutual benefit of the father and son.   The conceded facts show that the agreement was in effect a common law mortgage, yet the plaintiff might show by competent evidence that the business was carried on by Arthur with a purpose to obtain all the goods he could without paying for them and then have his father take possession of them upon his mortgage.   It was in this view that the false statements made by Arthur to his creditors were offered.   Those statements and the fact that Arthur after his father took possession removed $2,500 worth of goods from the store in the night time and stored them in another town show *his* intention to defraud his creditors.   If the action were against him these statements would have been admissible in proof of his fraud; but the action is against his father, and there was no evidence offered that tended to connect the defendant with these statements.   Indeed, the court said in ruling them out, that if any evidence should afterwards be offered tending to connect the defendant with them the offer of them in evidence might be renewed.   As such evidence was not produced the statements could not have affected the defendant's liability any more than the evidence of Arthur's removing a part of the goods from the store without the defendant's knowledge.   It is also a well settled rule, where an attempt is made to show conspiracy, that a foundation must first be laid by proof sufficient in the opinion of the trial court to establish *prima facie* the fact of

conspiracy between the parties, or proper to be laid before the jury as tending to establish such conspiracy before admissions of an alleged co-conspirator can be admitted.    I Greenl. Ev. § III.    The exceptions show that the necessary foundation was not laid in this case.

5.  The mere relation of mortgagor and mortgagee, in the absence of evidence of collusion between them to defraud the creditors of the former, did not create such a privity of estate as entitled the plaintiff to use the declarations of one against the other.  There was nothing suspicious or unusual in the conduct of the defendant.   He had loaned his son $8,000 upon his notes secured by what we hold was a valid mortgage. He learned that his son was in debt and insolvent, and, by virtue of the agreement, he took possession of the goods and fixtures. He does not claim under a right acquired subsequent to his son's declarations, but under a prior right, and when he exercised that right by taking possession, his title dated back to the time of making the mortgage.

It must be seen that if the statements had been received in evidence, the jury could have made no legitimate use of them as affecting the defendant's liability, for no relation was shown to exist between him and his son that made the declarations of the latter evidence against him.

6.  The testimony of Donlin was that he was told by Arthur, soon after the business was undertaken, that the defendant had loaned him five or six thousand dollars to go into business with, and that the defendant was to have the right at any time to take possession of the property.   This evidence was admissible for the reason that the plaintiff, as trustee, was successor to all rights of property that Arthur possessed and that he must recover through Arthur's title.   It was held in *Alger* v. *Andrews,* 47 Vt. 238, that the declarations

of one against his title to property, made while in his possession and before he assigned it to the defendants, were admissible against the defendants.   See *Bucklin* v. *Beals,* 38 Vt. 653; *Davis* v. *Windsor Savings Bank,* 48 Vt. 582.   This admission stands upon opposite ground from that upon which Arthur's statements to his creditors were offered in evidence.   They were in support of the plaintiff's claim of title, while this admission makes against that claim and against the plaintiff's interest.

There was no error in the rulings.   *Judgment affirmed.*