A. P. Bean v. Chester S. Parker.

February Term, 1915.

Present: Munson, C. J., Watson, Haselton, Powers, and Taylor, JJ.

Opinion filed November 20, 1915.

*Mortgages—Misdescription of Note—Parol Evidence—Bankruptcy—Trustee as Creditor—Foreclosure of Chattel Mortgage—Fraud—Sufficiency of Evidence—Promissory Note—Consideration—Record of Chattel Mortgage—Constructive Notice—Defective Affidavit—Effect—Indemnity—Right of Mortgagee.*

Where a mortgagee held a note for $590.38, which she claimed was secured by a mortgage describing a note for $490.38, parol evidence was admissible to show that the note for $590.38 was the one intended to be described in the mortgage, as such evidence did not vary the mortgage, but only corrected the mistake and identified the note.

In assumpsit by a trustee in bankruptcy, against a sheriff to recover the proceeds of the sale of the bankrupt's property, made in foreclosing a chattel mortgage thereon, evidence *held* to sustain a finding that in the foreclosure proceeding no fraud on other creditors was intended, but that the intention was to protect the lien on the property.

A promissory note, payable on demand, secured by a chattel mortgage, and given by the maker to one liable as surety on two promissory notes previously signed with the maker, and as security for the surety's liability, was supported by sufficient consideration.

The affidavit and the certificate of the oath, required by P. S. 2622, 2624, are essential to the validity of the mortgage, and, together with it, constitute one instrument for record.

Where a chattel mortgage was given to secure a note that was given by the mortgagor to the mortgagee as security for the latter's liability as surety for the former on another outstanding note, and the affidavit was only that prescribed by P. S. 2622, that the mortgage is to secure the debt specified in the condition thereof, the mortgage was nevertheless entitled to registration, and its record operated as constructive notice.

Where the affidavit appended to a chattel mortgage was defective in that it did not verify the liability against which it was intended to indemnify, as required by P. S. 2624, so that, to the extent that it was given merely as such indemnity, it was invalid except as against the mortgagor and his executors, etc., under P. S. 2621, as amended by No. 69, Acts 1908, yet upon delivery of the mortgaged property by the mortgagor to the mortgagee the mortgage became valid at common law as against all persons from the time of its execution.

The mortgagee under a chattel mortgage given in part to indemnify her against a still existing liability as surety for the mortgagor is entitled to hold the proceeds of the sale until she is indemnified or is relieved from her liability as such surety.

Under the Federal Bankruptcy Act, as amended by Act of June 25, 1910, the trustee in bankruptcy has, in respect of the bankrupt's property, all the rights and powers of a judgment creditor holding an execution duly returned unsatisfied.

GENERAL ASSUMPSIT for money had and received. Plea, the general issue. Trial by court at the September Term, 1914, Orleans County, *Fish,* J., presiding. Judgment for defendant. The plaintiff excepted. The opinion states the case.

*J. W. Redmond* for the plaintiff.

*W. W. Reirden* and *Frank D. Thompson* for the defendant.

WATSON, J. The trial of this case was by the court. The findings show the facts hereinafter stated.

Prior to March 2, 1914, Charles A. Kelton was engaged in the mercantile business at Glover, this State. On July 1, 1907, he executed and delivered to his mother, Irene B. Kelton, a note for $590.38, the consideration of which was money advanced to him by her. At the time the note was given, it was understood between them that it was not to be paid unless in case of need on the part of the mother, and it appeared in evidence that she has not been in need of this money, but wanted it with which to pay the bank notes hereinafter referred to, on which she is liable.

On September 4, 1909, Irene B. and Arthur Salmon signed with Charles A., a note for $300, payable to the Barton Savings Bank and Trust Company, which was renewed on July 12, 1912, by a note for the same amount; and on October 27, 1909, they signed with him a note for $500, payable to the same bank. On February 20, 1914, these two notes were taken up by giving the bank a new note dated December 1, 1913, with the same signers, for $792. This note is unpaid. The first two bank notes were secured by a chattel mortgage from Charles A., and a mortgage of a slaughter-house. They were also secured by a mortgage given by Salmon to Irene B. While the latter was liable upon said two notes in the manner indicated, Charles A. gave her a note for $1000, payable on demand, and secured the same at different times, by chattel mortgages marked exhibits 4, 5, and 1, respectively. Exhibit 1, the mortgage in question, is in writing, was executed on the 12th day of February, 1912, and recorded the next day, in the office of the town clerk of the town in which the mortgagor resided, all in accordance with the provisions of section 2621 of the Public Statutes. Neither this note nor the mortgages were asked for by Irene B.; they were voluntarily given to her by Charles A. At the time of the giving of the last named note, Irene B. acknowledged the receipt .thereof by a writing dated November 27, 1909, reading as follows: "Received of C. A. Kelton one promissory note of ($1000) one thousand dollars dated Nov. 27, 1909 to cover 1 bank note of ($500) five hundred dollars, and one note of ($300) three hundred dollars, given to Barton Savings Bank and Trust Co., and signed by C. A. Kelton, Irene B. Kelton, Arthur Salmon. When these bank notes are paid by C. A. Kelton to my full satisfaction then the note of ($1000) one thousand dollars becomes null and void." This writing was signed by Irene B., and represents the agreement of the parties, in respect to the note given in connection therewith.

The bank called for the payment of said two notes on which Irene B. was liable, whereupon she placed the mortgage, exhibit 1, and the notes for $590.38, and $1000, respectively, in the hands of her attorney for attention and direction, and he placed them in the hands of the defendant, a deputy sheriff, with instructions to foreclose the same. On March 2, 1914, the defendant called on the mortgagor and demanded the payment of the debt mentioned in the mortgage, and was advised by him that

he could not pay the obligation. The mortgagor then, on the same day, delivered the possession of the property described in the mortgage, to the defendant who retained the same until the time of the sale in June, following.

The bank discharged a chattel mortgage on the same property that is included in the mortgage upon which the sale was had, but retained its mortgage on the slaughter-house, which is appraised for the purposes of the bankruptcy proceedings at three hundred dollars; it also retained the mortgage from Salmon to Irene B.

Charles A. was adjudged a bankrupt March 27, 1914, and the plaintiff was appointed trustee of the bankrupt estate. The sale in question was begun after the bankruptcy proceedings were instituted, and completed before this suit was brought. The proceedings in foreclosure were wholly under and by virtue of the chattel mortgage, exhibit 1, and the notes for $590.38 and $1000; and the defendant justifies solely on account of said mortgage and notes, and the proceedings under them. Possession of the mortgaged property was taken by the defendant before the bankruptcy proceedings were begun, and he was in possession thereof at the time of the bringing of those proceedings. The plaintiff claims to hold the defendant in the full amount received from said sale, on the ground that the sale was in fraud of the rights of the creditors of the bankrupt, whose claims have been established in the court of bankruptcy, to an aggregate amount exceeding $1050. The sum received by the defendant from the sale under the chattel mortgage, was $801.22. In the proceedings relative to foreclosure, no actual fraud was intended on other creditors, but the intention was to protect the lien on the property.

One of the notes secured by exhibit 1, is therein described as for the sum of $490.38, dated July 1, 1907, and the other as for the sum of $1000, dated November 27, 1909, it being the note for that sum, before mentioned. There is no note for the sum of $490.38. The mortgage (exhibit 1) was intended to cover the same indebtedness that was embraced in the two prior chattel mortgages, (exhibits 4 and 5,) but the note for $590.38 was misdescribed in exhibit 1, by the draftsman, as a note for $490.38. This finding as to the real intent and as to the mistake of the draftsman, was made on oral evidence admitted subject to the plaintiff's objection and exception, and such as is furnished by

the exhibits in the case. Under this exception, the plaintiff says (1) the finding is unwarranted by the evidence; (2) it was made on inadmissible evidence, received against objection and exception; (3) it amounts to the reformation of a written instrument in an action of assumpsit. As to the first ground assigned, it is not necessary to recite the evidence. A careful examination of it shows that the finding was warranted. As to the other grounds assigned, the note produced corresponded in all respects to the note described, except that the figure representing hundreds was written ''4'' instead of ''5.'' We think the parol evidence was properly received to show that the note which the mortgagee had, was in fact the one intended to be described in the mortgage. In *Johns* v. *Church,* 12 Pick. 557, 23 Am. Dec. 651, the mortgage in question appeared to have been given as collateral security, to indemnify the plaintiff from liability as surety for one S. on a note of a certain date, for two hundred thirty-six dollars. The note produced was for two hundred fifty-six dollars. Parol evidence was received to show that this was the only note the plaintiff ever signed as surety for S. It was objected on the ground that this was contradicting the writing by parol evidence. It was held that the evidence was properly received. In *Pierce* · v. *Parker,* 4 Met. 80, the note was described in the schedule as dated October 18th, 1833, and payable May 21st, 1834, when it was in fact payable April 21st. It was argued that as the description of the note was perfect in itself, they could not go outside the instrument to correct the mistake, if it was one, and that parol evidence was inadmissible to identify the note. Thereon the court said · the law is well established that parol evidence is inadmissible to vary the terms or construction of a written contract, or to substantiate a defence against a note which is inconsistent with the tenor thereof. But that in the case before them, the evidence was not offered to vary the written contract, but to show that there was a misdescription of the time of payment of the note, in the schedule annexed to the assignment, which happened through inadvertence. ''And it is a well settled principle of law, that where an instrument, which is offered to prove the subject-matter described, differs in one or more particulars from the thing described, evidence is admissible to show their agreement or identity, notwithstanding such misdescription: As where there is a mistake in the description of land intended to be con-

veyed, by the addition of some circumstance which is false."
In *Melvin* v. *Fellows,* 33 N. H. 401, the note was described in
the mortgage as for $36.30. The note produced was for $67.25.
It was held that parol evidence was admissible to establish the
identity of the note. In *Cushman* v. *Luther,* 53 N. H. 562, the
condition of the mortgage described "two notes for $150 each."
One note produced was for that sum, and the other was for two
hundred dollars, but in all other respects they corresponded
with those described in the mortgage. It was held that parol
evidence was admissible to show that these two notes were the
ones intended to be secured by the mortgage. To the same
effect are the holdings in the cases following: *Hall* v. *Tufts,* 18
Pick. 455; *Clark* v. *Houghton,* 12 Gray, 38; *Payson* v. *Lamson,*
134 Mass. 593, 45 Am. Rep. 348; *Williams* v. *Hilton,* 35 Me. 547,
58 Am. Dec. 729; *Snow* v. *Pressey,* 85 Me. 408, 27 Atl. 272;
*Paine* v. *Benton,* 32 Wis. 495; *Rock* v. *Collins,* 99 Wis. 630, 75
N. W. 426, 67 Am. St. Rep. 885.

Our attention is directed to the case of *Edgell* v. *Stanfords,*
3 Vt. 202. There it was held in a case of ejectment brought
upon a mortgage, that the note secured by the mortgage must be
produced on the trial; and that as the note produced varied
from that described in the mortgage,.parol evidence was not ad-
missible to show the note named in the mortgage as for four
hundred forty dollars, was intended to be described as for four
hundred forty-nine dollars, the sum of the note produced, the
court saying that no authorities had been produced, and they
knew of none, holding such evidence to be admissible. But in
*White* v. *Miller,* 22 Vt. 380, an action in assumpsit for money
had and received, it was held that where in a deed the descrip-
tion of the land conveyed was by metes and bounds, followed by
the words, "the same containing about five and three-fourths
acres, be the same more or less," it might be shown by parol evi-
dence that the contract was in fact for a certain number of
acres, at a specified price per acre, and that a mutual mistake
was made in the measurement, by which the quantity was sup-
posed to be larger than it really was. We think, as intimated
by the Massachusetts court in one of the cases noticed above, that
this·is based upon the same principle as that involved in cases
where such evidence has been held properly received to show a
misdescription, by mistake, of the debt in the condition of a
mortgage. To the extent that the case of *Edgell* v. *Stanfords,*

is in conflict with our holdings in the present case, we deem it unsound in principle, and it is overruled.

The exception to the finding that "In the proceedings relative to foreclosure no actual fraud was intended on other creditors, but the intention was to protect the lien on the property," is on the ground that it was not warranted by the evidence. It is true that some of the testimony of Charles A., considered by itself, tended strongly to the contrary of this finding; but he also testified that the mortgage was given to secure his mother, and that he acted in all good faith in giving it. In answer to a question by the court as to how that could be if he did not get from her the one thousand dollars, the sum for which one of the notes secured by the mortgage was given, he answered, "Keep her quiet." And being asked what she was talking about, that he wanted to keep her quiet, answered, "Mr. Salmon had signed two notes, one for three hundred dollars and one for five hundred dollars, to the Barton Savings Bank and Trust Company, with the understanding when those notes were given that I should give them a mortgage of the property, but the bank wanted the property or wanted the mortgage and took the mortgage instead of them, in October; they were not satisfied unless they had a mortgage, this mortgage was given for their signing those notes." Irene B. testified that the note for one thousand dollars was given to her by Charles A. with the understanding that it was to secure her against any harm from signing the notes at the bank; that the bank called on her for payment of the notes she had so signed, and then she took steps to foreclose the mortgage in question. The evidence shows that she had given the bank collateral security on these notes. The foregoing evidence, together with the provisions of the receipt given by her to Charles A., plainly showing the purpose of the thousand-dollar note to be as security for signing the bank notes, fully warranted the finding to which objection is made. This being so, the finding is not legally subject to criticism because there was evidence tending the other way. It devolved upon the trial court to say on the whole evidence, what the fact was.

Exception was taken to the judgment rendered on the facts found. Thereunder it is said that the thousand-dollar note was without consideration. But that this is not so, the cases of *Fletcher* v. *Edson*, 8 Vt. 294, 30 Am. Dec. 470, and *Shedd* v. *Bank of Brattleboro*, 32 Vt. 709, are full authority. In the

former case, the defendant gave the plaintiff a note payable on demand, for the sum therein named. On the back of the note was a writing showing that the note was given as security for signing a note for the same amount for the defendant. The action was assumpsit in two counts, one declaring on the note, and the other, on the note in connection with the written condition on the back of it. Certain subsequent attaching creditors appeared under the statute, to defend the action. Thereon this Court, through Judge Stephen Royce, said: ''The contract consists of the note for $1150, payable on demand, controlled and qualified by the stipulation endorsed upon it. Taken together they amount to an undertaking to pay into the plaintiff's hands, for his security, the whole amount for which he stood responsible for the defendant, whenever he should be called on for payment by the creditor, or whenever he should have reason to doubt the defendant's ultimate responsibility to save him harmless. We discover no sufficient ground for doubting the validity of such a contract. The plaintiff had a right to prescribe the terms on which he would incur a responsibility for the defendant's debt; and his assuming that liability was a sufficient consideration for the defendant's engagement to him.'' In the latter case, a note was given by a debtor in failing circumstances, payable on demand, to a creditor, solely for the purpose of being immediately put in suit in order to secure the debtor's existing obligations to the creditor, but which were not yet matured; and it was held that the note was valid even against subsequent attaching creditors of the property attached in the suit on the note, whose claims were mature at the time it was executed.

The statute provides that the mortgagor and the mortgagee, or in the absence of the latter, his agent or attorney, shall make and subscribe an affidavit in substance ''that the foregoing mortgage is made for the purpose of securing the debt specified in the conditions thereof, and for no other purpose, and that the same is a just debt, due and owing from the mortgagor to the mortgagee. Such affidavit with the certificate of the oath signed by the authority administering the same shall be appended to such mortgage, and recorded therewith.'' P. S. 2622. ''If such mortgage is given to indemnify the mortgagee against liability assumed, or to secure the fulfillment of an agreement other than the payment of a debt due from the mortgagor to the

mortgagee, or given to a trustee to secure the bonds issued or to be issued thereunder, such liability, agreement or obligation shall be stated specifically in the condition of the mortgage; and the affidavit shall be so varied as to verify the validity and justice of such liability, agreement or obligation." P. S. 2624. The affidavit and the certificate of the oath properly signed are essential to the validity of the mortgage, and together with it constitute one instrument for record. *Hunt* v. *Allen,* 73 Vt. 322, 50 Atl. 1103. The affidavit appended to the mortgage in question is in the form prescribed by section 2622, and the entire instrument on its face was executed according to the formal statutory requisites. It was therefore entitled to registration, and the record thereof operated as constructive notice notwith-standing the hidden defect in the substance of the affidavit, presently to be noticed. *Isham* v. *Bennington Iron Co.,* 19 Vt. 230; *Angier* v. *Schieffelin,* 72 Penn. St. 106, 13 Am. St. Rep. 659; *Ogden Building and Loan Assoc.* v. *Mensch,* 196 Ill. 554, 63 N. E. 1049, 89 Am. St. Rep. 330; *Morrow* v. *Cole,* 58 N. J. Eq. 203, 42 Atl. 673; *Corey* v. *Moore,* 86 Va. 721, 11 S. E. 114; Wig. Ev. Sec. 1649.

Yet the affidavit, not being in compliance with the provisions of section 2624 of the statutes, is defective in substance, by reason whereof the mortgage would not be valid against any person except the mortgagor, his executors and administrators, (P. S. 2621 as amended by No. 69, Laws of 1908,) to the extent certainly that it was given merely as an idemnity against liability assumed, in respect of which the note for one thousand dollars was given, (*Tarbell* v. *Jones,* 56 Vt. 312; *Sherman* v. *Esley Organ Co.,* 69 Vt. 355, 38 Atl. 70; *Nichols* v. *Bingham,* 70 Vt. 320, 40 Atl. 827,) had not such resultant effect been obviated by the delivery of the possession of the property to the mortgagee as stated above. By such delivery of possession, the mortgage became good at common law, against all persons, and related back to the time of its execution. *Thompson* v. *Fairbanks,* 75 Vt. 361, 56 Atl. 11, 104 Am. St. Rep. 899, affirmed in 196 U. S. 516, 49 L. ed. 577, 25 Sup. Ct. 306; *Mower* v. *McCarthy,* 79 Vt. 142, 64 Atl. 578, 7 L. R. A. (N. S.) 418, 118 Am. St. Rep. 942.

The mortgagee, after more than thirty days from the time the condition of the mortgage was broken as to the note for one thousand dollars, caused the mortgaged property to be sold

under the mortgage, by the defendant, a public officer, and no claim is made that she did not proceed according to the provisions of the statute in this respect. See *Calkins* v. *Clement,* 54 Vt. 635.

Since the mortgage was in part for the indemnity of the mortgagee against liability as surety for the bankrupt, she is entitled to hold the proceeds of the sale for her security, until she is indemnified or is relieved from the notes she so signed. *Spaulding* v. *Austin,* 2 Vt. 555. This being so, it is unnecessary to consider what the mortgagee's present rights are upon the findings relative to the other note secured by the mortgage. It is argued that the findings show this note not yet due. Let the soundness of this position be granted, and still the contingency may arise which will entitle her to payment thereon. For the fulfillment of this obligation, like any other, security may be held by way of such a mortgage. Beyond this we need not speak at the present time concerning it.

The trustee in bankruptcy stands in these proceedings with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. This is in accordance with the provisions of the Federal Bankruptcy Act as amended by the Act of 1910. It is said in Collier on Bankruptcy, 9th Ed. 942, that this amendment disposes of any doubt which may have existed as to the rights of the trustee to proceed as a judgment creditor against conveyances invalid for failure to record or file, or because of fraud as against creditors. It is upon the last named ground that the plaintiff has proceeded in this case. But as we have seen neither fraud in fact nor intent by either the bankrupt or his mother, to defraud creditors, has been found, and on the findings there was no fraud in law.

*Judgment affirmed.*