### In re CALEDONIAN CO., Inc.

#### Petition of SMITH.

(Circuit Court of Appeals, Second Circuit. April 13, 1921.)

#### No. 53.

Chattel mortgages ☞63—Affidavit debt was owing to mortgagee, who loaned it on behalf of others, held true.

Where 10 individuals contributed a sum of money, which was delivered to a bank cashier to be loaned to the bankrupt, and the cashier, in making the loan, took a note payable to himself, secured by a chattel mortgage, the affidavit of the mortgagor and mortgagee, as required by G. L. Vt. 2788, that the mortgage was to secure a just debt due and owing from the mortgagor to the mortgagee, was true, since the mortgagee was the only one authorized at law to collect the debt, and the fact that the contributors could have sought equitable relief to compel him to pay the amount recovered to them did not make the debt owing to them, and therefore the mortgage was valid and enforceable.

Petition to Revise Order of the District Court of United States for the District of Vermont.

In the matter of the Caledonian Company, Incorporated, bankrupt. Petition by Homer E. Smith to revise an order in bankruptcy entered in the District Court. Order reversed.

The bankrupt published a newspaper and conducted a printing business at St. Johnsbury, Vt. Some months before petition filed, the manager of the bankrupt business solicited pecuniary aid from a number of his neighbors, apparently to secure the continued publication of the newspaper. In result 10 men contributed, or became liable for, $300 apiece for this purpose.

---

Mr. Smith was the cashier of the First National Bank of St. Johnsbury, and to him, or to his bank, and subject to his order, the 10 men each either paid $300 or discounted at Mr. Smith's bank their notes for the requisite amount. Smith actually paid bankrupt $3,000, took its promissory note payable on demand for that sum, with interest, and contemporaneously obtained the security of a chattel mortgage covering substantially a set of printing machinery and appliances used by bankrupt in its business.

The mortgage in usual form transferred the mortgaged property to Smith, upon condition that if the Caledonian Company paid the promissory note aforesaid (which it in the mortgage promised to pay according to the tenor and effect thereof) then the instrument of mortgage should be null and void. Bankruptcy supervened with the note unpaid, and Mr. Smith filed his petition to be awarded the proceeds of the mortgaged property, which had been sold by the trustees in bankruptcy.

The referee held that the $3,000 "was a debt due and owing from the mortgagor to the mortgagee, and that Smith was the only person who could sue for and collect said note, foreclose the chattel mortgage, surrender the note, or discharge the chattel mortgage."

The Vermont statute regarding chattel mortgages (General Laws, § 2788) requires that the parties to such an instrument shall make affidavit, "in substance as follows: 'We severally swear that the foregoing mortgage is made for the purpose of securing the debt specified in the conditions thereof, and for no other purpose, and that the same is a just debt, due and owing from the mortgagor to the mortgagee.'" The proper officer of the bankrupt and Mr. Smith did execute an affidavit in this form.

The District Judge, reviewing the action of the referee, held that "the $3,000 was not owing from the mortgagor to the mortgagee, but to the 10 persons who actually loaned it to the bankrupt." It was therefore held that the affidavit was insufficient, because false, and the mortgage void as against creditors for that reason. Smith thereupon filed this petition.

Alexander Dunnett, Charles A. Shields, and David S. Conant, all of St. Johnsbury, Vt., for petitioner.

John W. Redmond, of Newport, Vt., and David E. Porter, of St. Johnsbury, Vt., for trustees in bankruptcy.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The statute of Vermont prescribing the form of affidavit used in chattel mortgages has been often construed (Tarbell v. Jones, 56 Vt. 312; Sherman v. Estey, etc., Co., 69 Vt. 355, 38 Atl. 70; Nichols v. Bingham, 70 Vt. 320, 40 Atl. 827; Herald v. Clere, etc., Co., 86 Vt. 141, 84 Atl. 23; Bean v. Parker, 89 Vt. 532, 96 Atl. 17); and the somewhat similar statute of New Hampshire has been considered in Belknap v. Wendell, 11 Foster (31 N. H.) 92. The Tarbell Case states the doctrine that—

"Under our statute substantial truth specifically told is an essential requirement in describing the debt or obligation to be secured, in order to constitute a chattel mortgage valid as against creditors."

The same rule is somewhat differently phrased in the Nichols Case, which declares that—

"The oath must conform to the purpose of the mortgage, and verify the truth, justice, and validity of the debt or other liability sought to be secured thereby."

The New Hampshire interpretation is stated, with due consideration of all the reported cases, in Hackett v. Potter, 135 Mass. 349, as follows:

The debt secured "must be a debt due and owing from the mortgagor to the mortgagee. If it is given to secure a liability, it must be the liability of the mortgagee assumed for the mortgagor. If it is given to secure the performance of any other agreement, it must be an agreement between the mortgagor and the mortgagee, to the truth, validity, and justice of which they are both able to testify."

About the transaction at bar there was nothing obscure, complicated or concealed, and the question presented is no more than this: Did Mr. Smith and the proper officer of the bankrupt tell the truth when, after the execution and delivery of the promissory note above referred to, they both swore that the bankrupt was a debtor to Mr. Smith for "a just debt honestly due and owing from the mortgagor to the mortgagee"? If Mr. Smith had been an indorsee of this note, and the note itself had been made originally to the 10 men, he could have maintained an action upon it, and no one else could have done so, even though he had been accountable to the 10 contributors for whatever he might recover. Chase v. Burnham, 13 Vt. 447, 37 Am. Dec. 602. A fortiori is this true when he was the payee. The debt was evidenced by the note, and, that being commercial paper, suit would have been sufficient demand. But as between the bankrupt and Smith there was no other evidence of debt except the note; consequently, as long as Smith held legal title to the note, he alone could sue upon it, and if he could sue he could prove his debt in bankruptcy.

In short, the test question is this: Could any one of the 10 contributors, after this note was given, have maintained an action at law for $300 against the Caledonian Company? None of them could, because that company did not owe any of them $300. It did owe Mr. Smith $3,000 on a promissory note, and the law pays no attention as to where Mr. Smith got that money from. That in equity other remedies would have been available, had Mr. Smith proved an unfaithful trustee, is a matter of no moment under the facts at bar. It may be pointed out that the circumstance that Mr. Smith actually received the money, and actually loaned it, thereby being the person, and the only person, who made a contract with the bankrupt, wholly differentiates this litigation from the Tarbell decision, and makes the reason of that judgment excellent authority for the petitioner herein.

Being of opinion that the affidavit attached to the mortgage was legally and morally true, the order under review is reversed, with costs, and the matter remitted for further proceedings not inconsistent with this opinion.